291 So.2d 45 (1974)
STATE of Florida ex rel. Robert L. SHEVIN, As Attorney General, Appellant,
v.
TAMPA ELECTRIC COMPANY, Appellee.
No. 72-479.
District Court of Appeal of Florida, Second District.
January 16, 1974.
Rehearing Denied March 26, 1974.
*46 Robert L. Shevin, Atty. Gen., Kenneth F. Hoffman, Asst. Atty. Gen., and John C. Bottcher, Special Asst. Atty. Gen., Tallahassee, for appellant.
Robert P. Murray, of Holland & Knight, Lakeland, for appellee.
McNULTY, Judge.
This is an ecology suit predicated on public nuisance.[1]
The Attorney General seeks injunctive relief against Tampa Electric Company (TECO) alleging that discharges from TECO's generating plants in Hillsborough County release sulfur dioxide, sulfur trioxide and other noxious and deleterious chemicals which, through the process of adsorption, commingles with air and its normal particles. In turn, he says, the contaminated air when inhaled flows into peoples' lungs, alveoli and other parts of the human body uniting with water or other body fluids thus forming sulfurous or sulfuric acid and other toxic substances which cause permanent, substantial impairment of the health and well-being of the public generally. The trial judge granted a motion to dismiss the complaint for the reason that primary jurisdiction in this case "should be with the [Department of Pollution Control under the provisions of the Florida Air and Water Pollution Control Act[2] in the interest of orderly procedure, standardizing pollution control, and reconciling the interest of the public, along with necessary industry." This appeal followed.
To begin with, we would agree that the "primary jurisdiction" doctrine is recognized in Florida.[3] In support of the trial judge's invocation thereof here, TECO argues first that the doctrine involves simply a matter of judicial discretion which is not shown to have been abused. We can't agree that it's simply a matter of discretion in the sense that the trial judge may invoke it or not as he thinks propitious. Rather, we think, it's a sound policy of judicial restraint to be indulged in only upon a predicate of firmly established expediencies. The doctrine was explained in United States v. Western P.R. Co., as follows:[4]
"The doctrine of primary jurisdiction, like the rule requiring exhaustion of administrative remedies, is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties. `Exhaustion' applies where a claim is cognizable in the first instance by an administrative agency alone; judicial interference is withheld until the administrative process has run its course. `Primary jurisdiction' on the other hand, applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views. [Citations omitted.]
"No fixed formula exists for applying the doctrine of primary jurisdiction. In every case the question is whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in *47 the particular litigation. These reasons and purposes have often been given expression by this Court. In the earlier cases emphasis was laid on the desirable uniformity which would obtain if initially a specialized agency passed on certain types of administrative questions. [Citations omitted.] More recently the expert and specialized knowledge of the agencies involved has been particularly stressed. [Citations omitted.] The two factors are part of the same principle, `now firmly established, that in cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion, agencies created by Congress for regulating the subject matter should not be passed over. This is so even though the facts after they have been appraised by specialized competence serve as a premise for legal consequences to be judicially defined. Uniformity and consistency in the regulation of business entrusted to a particular agency are secured, and the limited functions of review by the judiciary are more rationally exercised, by preliminary resort for ascertaining and interpreting the circumstances underlying legal issues to agencies that are better equipped than courts by specialization, by insight gained through experience, and by more flexible procedure.'" (Italics ours.)
It was further held in that case that the doctrine also applies where questions of fact and law are "so intertwined that the same factors are determinative on both issues," in which case the agency itself should first pass upon them.[5] Otherwise, it appears, issues solely of law should be passed on by the courts.[6]
Encapsulating then, as we view the doctrine, if in a given case the operative conclusion to be reached by the court is one of ultimate fact, or of law which in turn is dependent upon the existence of highly technical or specialized criteria peculiarly within the expertise of an administrative agency, such doctrine is invoked in the interest of uniformity more as a matter of advised judicial deference to a more competent tribunal rather than as a matter of judicial discretion which may or may not be exercised in favor of such deference. To illustrate, if the question to be resolved is the reasonableness of utility rates (an ultimate fact), or the applicability of a given tariff rate (a question of law), and the determination of such fact or conclusion of law may require antecedent resolution and consideration of highly technical matters, deference under the doctrine should be made to the agency for such determination. This is so even if the legal consequences of the agency's findings are amenable subsequently to judicial definition.
On the other hand, if the ultimate question in the case is solely a matter of law or one of law which is not "intertwined" with technical facts the "primary jurisdiction" doctrine is not applicable at all. The determination of a public nuisance as prayed for here, for example, is historically a judicial function, but is not necessarily dependent upon technically established criteria for its resolution. Given existing conditions which are fairly simple to establish, the determination of whether they constitute a judicially abatable nuisance, together with the nature and extent of a full and appropriate remedy if indeed they do, is a matter of law and lies within the special competence of judicial expertise.[7] Indeed, we question whether an administrative agency could legislatively be empowered to make such determinations relating to public nuisances to begin with; and this for the reason that it may well be *48 fundamentally an unwarranted usurpation of a judicial function.[8] Which isn't to say, however, that the legislature cannot declare something less to be a "nuisance" and authorize the invocation of judicial enforcement of statutory sanctions.[9] But in any case, it is clear to us that a given activity can constitute a judicially abatable nuisance notwithstanding full compliance with either legislative mandate or administrative rule. In such cases there is nothing for an agency to decide, and the primary jurisdiction doctrine is inapplicable since the legal effect of the complained of activity, together with an appropriate remedy, is peculiarly a judicial matter.[10] This is one of those cases as will be seen.
Now it is agreed that stringent anti-pollution rules have been promulgated by the Department of Pollution Control. But because of their stringency such regulations allow until July 1, 1975 for full compliance therewith as long as all reasonable interim precautions are taken to the extent possible with present technology. TECO next contends, therefore, that the determination of compliance or non-compliance with such regulations, as well as consideration of the highly technical questions relating to the limitations imposed in the premises by present technology, is a matter which ought be deferred under the doctrine to the expertise of the department. We are again compelled to disagree.
The complained of conditions either exist or they don't; and if they do it is a matter of law whether they constitute a nuisance now which is injurious to the health and well-being of the public generally. How they exist, whether they comply with the agency's regulations or whether present technology allows alleviation thereof when balanced against public necessity or inconvenience, might well be highly technical matters; but they are irrelevant to the ultimate question of whether, assuming their existence (a relatively simple matter to establish in this case we think), they constitute a nuisance as a matter of law. Therefore, the expertise of the agency  thus the invocation of the primary jurisdiction doctrine  again is unnecessary.
Moreover, assuming a presently enjoinable public nuisance, if there are any "practicalities" involved which should be considered in the light of present technology limitations, they inhere in the equities involved; and regardless of their potentially technical nature they more properly ought be taken into account by the trial court in the mandate of any injunctive relief deemed warranted.[11] Certainly, the primary jurisdiction doctrine notwithstanding, highly technical matters per se are no strangers to the courts. In any case, the existence of such "practicalities," of itself, is surely not a ground for either dismissal of the action or for the invocation of the "primary jurisdiction" doctrine as we understand it to be.
Accordingly, the order appealed from should be, and it is hereby, reversed for *49 further proceedings not inconsistent herewith.
BOARDMAN, J., concurs.
WALKER, DAVID SETH, Associate Judge, dissents.
NOTES
[1] See, F.S. §§ 60.05 and 823.05, F.S.A. 1971, which authorize the Attorney General to bring such suits
[2] Chapter 403, F.S. 1971, F.S.A.
[3] Northeast Airlines, Inc. v. Weiss (Fla. App. 1959), 113 So.2d 884.
[4] (1956), 352 U.S. 59, 63, 77 S.Ct. 161, 1 L.Ed.2d 126.
[5] Id. at p. 69, 77 S.Ct. at p. 168.
[6] Cf. Great Northern R. Co. v. Merchants Elevator Co. (1922), 259 U.S. 285, 42 S.Ct. 477, 66 L.Ed. 943.
[7] Wisconsin v. Dairyland Power Co-op (Wis. 1971), 52 Wis.2d 45, 187 N.W.2d 878.
[8] We suggest, also, that this theorem seems to have been expressly recognized by our legislature in enacting the Florida Air and Water Pollution Control Act, Chapter 403, F.S. 1971, § 403.191(1) F.S.A. of which provides:

"(1) It is the purpose of this act to provide additional and cumulative remedies to prevent, abate, and control the pollution of the air and waters of the state. Nothing contained herein shall be construed to abridge or alter rights of action or remedies in equity under the common law or statutory law, criminal or civil, nor shall any provisions of this act, or any act done by virtue thereof, be construed as estopping the state or any municipality, or person affected by air or water pollution, in the exercise of their rights in equity or under the common law or statutory law to suppress nuisances or to abate pollution." [Emphasis added.]
[9] See, e.g., § 823.05 n. 1 supra.
[10] See, e.g., n. 7 supra.
[11] See, Comments on the doctrine of comparative injury in 23 Fla.Jur., Nuisances, § 82 at p. 571.