448 So.2d 1074 (1984)
STATE of Florida, by and through the STATE ATTORNEY FOR the TWELFTH JUDICIAL CIRCUIT, Appellant,
v.
GENERAL DEVELOPMENT CORPORATION, a Delaware Corporation Authorized to Do Business in Florida, Appellee.
No. 83-58.
District Court of Appeal of Florida, Second District.
March 23, 1984.
*1075 James A. Gardner, State Atty., and David M. Levin, Asst. State Atty., Sarasota, for appellant.
Joseph Z. Fleming of Fleming & Huck and Robert Josefsberg of Podhurst, Orseck, Parks, Josefsberg, Eaton, Meadow & Olin, P.A., Wayne L. Allen and Valerie F. Fravel, Miami, and Judith S. Kavanaugh of Dye, Cleary, Scott & Deitrich, P.A., Bradenton, for appellee.
RYDER, Judge.
In this appeal we are presented with a question of first impression concerning civil and administrative enforcement of the state's environmental laws, particularly Chapter 403, by an individual state attorney. Specifically, appellant James A. Gardner, the State Attorney for the Twelfth Judicial Circuit, seeks review of an order dismissing his independently initiated[1] complaint for damages and civil penalties filed pursuant to section 403.141(1), Florida Statutes (1981), and alternative petition for enforcement of agency action filed pursuant to section 120.69(1)(a), Florida Statutes (1981) (complaint/petition).
In the alternative actions, appellant alleged appellee General Development Corporation (GDC) had committed and was committing violations concerning various environmental laws and rules and regulations promulgated by the Department of Environmental Regulation (DER) with respect to its commercial developmental activities that were occurring in the North Port Drainage District in Sarasota County. The trial court, although acknowledging appellant's "conscientious attempt to enforce the environmental laws of Florida," dismissed the complaint/petition with prejudice and ruled the state attorney lacked standing to independently bring either action on behalf of the state. Although we note that the 1968 Florida Constitution mandates a policy of protecting the state's natural resources, article II, section 7,[2] and we also *1076 acknowledge the efforts of the state attorney to ensure that this policy is properly effectuated, we must, nevertheless, affirm the trial court's ultimate rulings because we hold neither the state constitution, nor any statute, nor any case law gives a state attorney independent authority to commence, in his appropriate judicial circuit and on behalf of the state, a civil action for damages and penalties under section 403.141(1) and/or institute an administrative action to enforce DER's related rules and regulations under section 120.69(1)(a).

BACKGROUND
On September 27, 1982, appellant filed the above-mentioned alternative actions in the Twelfth Judicial Circuit in Sarasota County. Appellant alleged: (1) section 27.02, Florida Statutes (1981),[3] when read in conjunction with article V, section 17, Florida Constitution (1968),[4] gave him authority to file the civil action for damages and penalties, and section 120.69(1)(a) gave him authority to file the alternative petition for enforcement because a state attorney is "an agency" under section 120.52(1)(b); (2) GDC, a Delaware corporation, d/b/a in Florida, is subject to the provisions of chapter 403, specifically 403.161(1), and its correlative rules and regulations promulgated by DER; (3) GDC's various dredge and fill operations since July 1979 in Sarasota County with respect to construction and/or modification of certain canals and impoundments and creation of artificial lakes without valid DER permits resulted in prohibited air and water pollution under section 403.161(1)[5]; and (4) GDC's similar activities since December 1978 with respect to the creation and/or maintenance of the "Snover Waterway," the "Cocoplum Waterway," and the "Myakkahatchee Relief Canal" resulted in violations of water quality standards and related regulations also proscribed by section 403.161(1).[6] Additionally, appellant alleged that "[n]o other agency of the State of Florida has filed or is diligently prosecuting a Petition for Enforcement in this matter."
In response to the complaint/petition, GDC filed a motion to dismiss on October 26, 1982, contending appellant lacked standing to file either alternative action and filed a motion for summary judgment on grounds which also included the lack of standing contention.
Other relevant facts were adduced at the hearing on the motions and are as follows: On January 26, 1982, DER's enforcement supervisor sent to GDC a "Warning Notice" stating unauthorized canal construction had been occurring at the "Snover" and "Cocoplum" systems since 1979 and indicating GDC might be civilly and criminally liable for violations of environmental laws. GDC was also advised to cease all activity relating to the stated violations. Subsequently, on April 27, the same official sent an "Amended Warning Notice" to GDC stating other unauthorized dredge and fill violations had been discovered by DER and indicating GDC might be both civilly and criminally liable for these violations as well as the ones mentioned in the previous letter. The second notice also *1077 hinted that further investigations might be forthcoming.
It is unclear from the record, however, whether DER took any further action concerning the alleged violations prior to the time appellant filed the instant complaint/petition on September 27, 1982. In any event, on the date the complaint/petition was filed, appellant sent an unverified copy to DER along with a letter which stated he was suing on behalf of the state because of DER's inactivity, refusal to institute suit, and lack of cooperation with his office. The letter actually requested that DER treat the suit as one brought pursuant to section 403.412, Florida Statutes (1981).[7]
However, during the hearing on GDC's motions, appellant admitted that he was not proceeding under either section 403.412 with respect to the complaint for civil damages and penalties or section 120.69(1)(b), Florida Statutes (1981),[8] with respect to the administrative action. At the conclusion of the hearing, the trial court took the case under advisement and then later issued its final order on December 22, 1982. In that order, the court specifically ruled: (1) section 27.02 is merely enabling legislation for article V, section 17 of the Florida Constitution and simply "authorizes a state attorney to bring criminal and civil actions, but does not give special authority to bring an action [pursuant to section 403.141(1)]," and (2) section 120.69(1)(a) does not authorize a state attorney to bring a petition for enforcement of agency action because a state attorney is not included within the narrow definition of "agency" as set forth in section 120.52(1)(b). It is from this order that the state attorney appeals.

ISSUES
In this appeal, we have discerned the following two related and important issues which merit our discussion: (1) whether a state attorney has independent authority under section 27.02 (or any other statute) to institute in his judicial circuit and on behalf of the state a civil action for damages and penalties pursuant to section 403.141(1) for alleged violations of section 403.161(1) occurring in his circuit, and (2) whether a state attorney has independent authority under section 120.69(1)(a) to similarly institute a petition for enforcement to ensure compliance of certain rules and regulations promulgated by DER with respect to Chapter 403 which allegedly are not being enforced by the department itself. Our examination of the applicable constitutional provisions, statutes, and case law compels us to answer both of the above questions in the negative.

SECTION 403.141(1) CIVIL ACTION FOR DAMAGES AND PENALTIES

The Relevant Statutory Provisions
Chapter 403, and in particular Part I (sections 403.011 through 403.415(3)), is one of the legislature's comprehensive endeavors, consistent with the mandate of article II, section 7 of the Florida Constitution and the state's exercise of its police powers, to control, reduce, and prevent pollution of the "Sunshine State's" air and water; to *1078 provide for recreational, wildlife, and marine life needs; and to ensure continuing economic and industrial growth in accordance with a sound environmental policy. § 403.021(1)-(9), Fla. Stat. (1981); see generally 22 Fla.Jur.2d Environmental Rights and Remedies § 27 (1980).
Section 403.061 specifically gives DER "the power and the duty to control and prohibit pollution of the air and water in accordance with the law and rules and regulations adopted and promulgated by it." § 403.061(1)-(27), Fla. Stat. (1981). In particular, and relevant to the issues before us, DER is empowered to:
(3) Utilize the facilities and personnel of other state agencies, including the Department of Health and Rehabilitative Services, and delegate to any such agency any duties and functions as the department may deem necessary to carry out the purposes of this act.

... .
(6) Exercise general supervision of the administration and enforcement of the laws, rules, and regulations pertaining to air and water pollution.
... .
(8) Issue such orders as may be necessary to effectuate the control of air and water pollution and enforce the same by all appropriate administrative and judicial proceedings.

... .
(11) Establish ambient air quality and water quality standards for the state as a whole or for any part thereof... .
... .
(14) Establish a permit system whereby a permit may be required for the operation, construction, or expansion of any installation that may be a source of air or water pollution and provide for the issuance and revocation of such permits and for the posting of an appropriate bond to operate.
... .
(27) Perform any other act necessary to control and prohibit air and water pollution, and to delegate any of its responsibilities, authority, and powers, other than rulemaking powers, to any state agency now or hereinafter established.[9] (Emphasis supplied).
With respect to proscribed developmental activities, section 403.087(1), Florida Statutes (1981), prohibits the operation, maintenance, construction, expansion, or modification, without an appropriate and currently valid permit, of any "stationary installation[10] which will reasonably be expected to be a source of air or water pollution," "unless exempted by department rule." In accordance with its mandate under section 403.087, DER properly promulgated and adopted rules and regulations relating to the issuance of such permits.[11] No exemption was issued by the department in favor of GDC. Additionally, consistent with its mandate under section 403.061(11), the department also promulgated and adopted rules and regulations concerning water quality standards.[12] As previously mentioned, it was GDC's alleged failure to obtain valid permits for its dredge and fill operations and GDC's alleged violation of DER's water quality standards which formed the basis of appellant's civil suit for damages and penalties.
Section 403.161(1), Florida Statutes (1981), enunciates what shall constitute violations of Chapter 403. This section provides that it shall be prohibited:
(a) To cause pollution, except as otherwise provided in this chapter, so as to harm or injure human health or welfare, animal, plant or aquatic life or property.
(b) To fail to obtain any permit required by this chapter or by rule or regulation, *1079 or to violate or fail to comply with any rule, regulation, order, permit, or certification adopted or issued by the department pursuant to its lawful authority.
Subsection (2) of section 403.161 states that "[w]hoever commits a violation specified in subsection (1) is liable to the state for any damage caused and for civil penalties as provided in s. 403.141."
Subsection (1) of section 403.141, which is the alleged basis of appellant's standing, provides in relevant portion:
(1) Whoever commits a violation specified in s. 403.161(1) is liable to the state for any damage caused to the air, waters, or property, including animal, plant, or aquatic life, of the state and for reasonable costs and expenses of the state in tracing the source of the discharge, in controlling and abating the source and the pollutants, and in restoring the air, waters, and property, including animal, plant, and aquatic life, of the state to their former condition, and furthermore is subject to the judicial imposition of a civil penalty for each offense in an amount of not more than $10,000 per offense... . Nothing herein shall give the department the right to bring an action on behalf of any private person.
With respect to enforcement under Chapter 403, section 403.121 states, inter alia:
(1) Judicial remedies:
(a) The department may institute a civil action in a court of competent jurisdiction to establish liability and to recover damages for any injury to the air, waters, or property, including animal, plant, and aquatic life, of the state caused by any violation.
(b) The department may institute a civil action in a court of competent jurisdiction to impose and to recover a civil penalty for each violation in an amount of not more than $10,000 per offense. However, the court may receive evidence in mitigation. Each day during any portion of which such violation occurs constitutes a separate offense.
... .
(2) Administrative remedies:
(a) The department may institute an administrative proceeding to establish liability and to recover damages for any injury to the air, waters, or property, including animal, plant, or aquatic life, of the state caused by any violation... .
(b) If the department has reason to believe a violation has occurred, it may institute an administrative proceeding to order the prevention, abatement, or control of the conditions creating the violation or other appropriate corrective action. (Emphasis supplied).
Accordingly, we must analyze appellant's assertions in light of the relevant statutory provisions.

Discussion
Appellant essentially argues that section 27.02 when read in conjunction with article V, section 17[13] grants him the authority to independently initiate a section 403.141(1) civil action on behalf of the state. He further states that this interpretation is consistent with the dictates of article II, section 7,[14] particularly where DER has allegedly failed to enforce, as required, this constitutional policy and its parallel legislative policy as announced in section 403.021. Although we might be tempted to find solace in this argument because it appeals to our (or undoubtedly any other concerned citizen's) acute awareness and concern for today's burgeoning environmental problems that are inevitable with commercial development, we, nevertheless, reject appellant's novel contention with respect to this issue. We reach this conclusion after examining article V, section 17 and section 27.02 together, as well as determining the legislature's intention with respect to this issue as evidenced by the enactment of various statutes relating to the authority of state attorneys and by the enactment of certain sections of Chapter 403.
The Florida Constitution is the starting point for our analysis of appellant's contention. *1080 Article V, section 17 creates the office of a state attorney for each judicial circuit and defines his authority to act on behalf of the state. The relevant part of section 17 provides: "In each judicial circuit a state attorney shall be elected for a term of four years. He shall be the prosecuting officer of all trial courts in that circuit and shall perform other duties prescribed by general law ... ." (Emphasis supplied). We believe that the plain meaning of the emphasized sentence directly empowers a state attorney to independently bring appropriate criminal proceedings, including related proceedings,[15] in his circuit on the state's behalf without further legislative approval. However, the provision does not give a state attorney the authority to initiate a cause of action created by statute in favor of the state to recover civil damages and penalties for violations of section 403.161(1). Rather, only a specific general law can grant him the power to file such a suit. Such a construction of article V, section 17 is consistent with the scope of authority traditionally granted to and exercised by a state prosecuting attorney.
Furthermore, we hold that section 27.02 contrary to appellant's contention, is not such a specific general law but only broadly sets forth, as its heading indicates, a state attorney's general duties. It enables him to appear and represent the state before appropriate courts in all cases, whether criminal or civil, once the state is a party to a particular suit. This section alone does not give him standing to make the state a party to a statutorily-created civil action. The cases appellant cites in support of his argument are not applicable here because they only involve the exercise of a state attorney's authority to enforce violations of statutes proscribing criminal conduct.
Importantly, our holding is supported by the legislature's own construction of article V, section 17 as evidenced by the legislature's enactment of over twenty specific general laws that have explicitly given a state attorney the authority to independently initiate civil suits on behalf of the state in other areas concerning the health, safety, and welfare of Florida's citizens and environment.[16] One such specific general law is section 380.11, Florida Statutes (1981), "The Florida Environmental Land and Water Management Act of 1972." This law expressly gives the state attorney the power to institute a civil action to enjoin violations of section 380.11. Furthermore, another example is section 60.05(1), Florida Statutes (1981), the public nuisance statute. This law expressly grants the state attorney the authority to sue civilly on behalf of the state in order to abate and enjoin public nuisances which are causing injuries or damage to the general community. State ex rel. Shevin v. Tampa Electric Co., 291 So.2d 45 (Fla. 2d DCA 1974). See also Orlando Sports Stadium, Inc. v. State ex rel. Powell, 262 So.2d 881 (Fla. 1972); Health Club, Inc. v. State ex rel. Eagan, 338 So.2d 1324 (Fla. 4th DCA 1976). In fact, a public nuisance action seems to be one of the "rights of action or remedies in equity under the common law or statutory law," which is not abridged or altered by Chapter 403 and is cumulative to the remedies provided in that chapter. § 403.191; State ex rel. Shevin at 48, n. 8.
Therefore, on the basis of our foregoing analysis, we hold the constitution requires *1081 that a specific general law be enacted to enable a state attorney to independently initiate a section 403.141(1) civil suit on behalf of the state. Because no other constitutional provision specifically grants a state attorney the authority he sought to invoke in this case and no other statute provides such authority, we must now decide whether Chapter 403, and in particular Part I, gives a state attorney standing to institute and proceed on the complaint that was filed in this case.
We first note, after scrutinizing its numerous sections, that no provision of Chapter 403 makes any reference whatsoever to a state attorney much less expressly granting him the power to instigate a section 403.141(1) civil suit. In fact, section 403.231, Florida Statutes (1981), specifically states that "The Department of Legal Affairs shall represent the state and its agencies as legal advisor in carrying out the provisions of this act." This lends further support to GDC's contention that appellant lacks standing to bring the section 403.141(1) suit. Moreover, assuming arguendo that section 403.061(27) allows DER to delegate its civil enforcement authority to a state attorney, a question here we do not decide, no such delegation of authority has been made by the Secretary of DER. See Chapter 17, Fla. Admin. Code.
Further support for the above conclusion is found in 1972 Op.Att'y Gen. 072-239 (Aug. 2, 1972). The opinion states that a public prosecutor, specifically a county solicitor (whose duties the opinion noted were to be assumed by the state attorney under the 1972 amendments to article V), had no authority to institute an action for civil penalties pursuant to section 403.121(1)(b), Florida Statutes (Supp. 1972).[17] The opinion also mentioned that the Department of Legal Affairs was named by the statute as DER's legal representative.
Additionally, even though the state attorney contends that his right to civilly enforce section 403.161(1) violations is consistent with the mandates of article II, section 7, the argument fails because of two reasons. It neglects to consider the constitutional restraints imposed on a state attorney in article V, section 17 (which we have previously outlined) and also fails to consider that article II, section 7 itself allows the legislature to make general laws relating to the abatement of air and water pollution. With respect to this latter point, the legislature has enacted Chapter 403 and clearly has intended for DER to be the state entity responsible for bringing civil actions for damages and penalties pursuant to section 403.141(1). See §§ 403.061(6); 403.121; 404.131.[18] We do, however, make the observation that a state attorney is not powerless to play a role in protecting the environment since the legislature has specifically empowered him to criminally prosecute section 403.161(1) violators. § 403.161(3).[19]
Thus, it seems clear from a plain and ordinary construction of section 403.141(1) that this particular provision merely creates the civil cause of action in favor of the state and subjects a section 403.161(1) violator to liability in favor of the state for damages, penalties, costs and expenses. Cf. Gardinier, Inc. v. Florida Department of Pollution Control, 300 So.2d 75, 77 (Fla. 1st DCA 1974) (interpreting pre-1972 provisions). Moreover, section 403.141(1) must be read in pari materia with the rest of *1082 Part I of Chapter 403 and, in particular, with sections 403.121, 403.141, and 403.161. Section 403.121 clearly delineates the judicial and administrative procedures available to DER to civilly enforce violations of section 403.161(1) and also specifically empowers DER to seek and recover the aforementioned damages, penalties, costs, and expenses, State Department of Pollution and Control v. International Paper Co., 329 So.2d 5, 7 (Fla. 1976). Simply put, section 403.161 sets forth the violations; section 403.141 creates the civil liability in favor of the state; and section 403.121 empowers DER alone to sue for civil damages and penalties.
Accordingly, as we interpret the powers of a state attorney with respect to Chapter 403, it is clear to us that he indeed lacks standing to bring a section 403.141(1) civil action against an alleged polluter such as GDC. It only makes sense that a statewide agency which is specifically chartered by the legislature as the state's chief pollution control agency, as opposed to a localized state attorney whose primary responsibility is the enforcement of criminal laws, has the sole authority to institute civil actions pursuant to section 403.141(1). That the legislature has chosen DER instead of the various state attorneys to civilly enforce provisions of Chapter 403 is a valid exercise of the legislature's inherent powers. Absent a clear indication by the legislature through a specific general law that a state attorney can independently bring a section 403.141(1) civil action, we resist the invitation to legislate and thus will not grant that authority.[20] The trial court was correct in ultimately ruling appellant lacked standing to institute the complaint for damages and penalties.

SECTION 120.69(1)(a) PETITION FOR ENFORCEMENT OF AGENCY ACTION
As noted previously, appellant also contends he has standing to independently initiate on behalf of the state a section 120.69(1)(a) action to enforce rules and regulations adopted and promulgated by DER in accordance with the provisions of Part I, Chapter 403. In order to reach his conclusion, he first argues that he is an "agency" within the "[e]ach other state officer" language of section 120.52(1)(b). He then argues that as an agency he can enforce DER's rules and regulations in accordance with the "[a]ny agency" language of section 120.69(1)(a).
Appellant reasons that without such standing serious harm will result to the state's environment because the agency empowered to act in this area has failed to enforce the rules and the laws it is required to enforce. Although this rationale seems meritorious on its face at first blush, the interpretation proffered by appellant is inapposite to the rules of statutory construction, common sense, and the legislative intent behind the law.

The Relevant Statutory Provisions
With respect to enforcement of agency action, section 120.69(1)(a), excluding the "except as otherwise provided" clause (which is not applicable here), states: "Any agency may seek enforcement of an action by filing a petition for enforcement, as provided in this section, in the circuit court where the subject matter of the enforcement is located."[21] Section 120.52 provides, inter alia:
As used in this act:
(1) "Agency" means:

*1083 (a) The Governor in the exercise of all executive powers other than those derived from the constitution.
(b) Each other state officer and each state department, departmental unit described in s. 20.04, commission, regional planning agency, board, district, and authority... .
(Emphasis supplied)
(c) Each other unit of government in the state, including counties and municipalities, to the extent they are expressly made subject to this act by general or special law or existing judicial decisions.[22]
Accordingly, in order to reach our conclusion, we must first examine section 120.52(1), which defines "agency" for Chapter 120 purposes.

Discussion
As a starting point, subsection (1)(a) of section 120.52 must be read in pari materia with subsection (1)(b). § 1.04, Fla. Stat. (1981). In doing so, it is evident that "[e]ach other state officer" refers only to the other state executive branch officers, in particular the Cabinet[23] and Lieutenant Governor, and does not include every state official that might nominally be called a state officer.[24] Our conclusion is supported by In re Advisory Opinion of the Governor, 334 So.2d 561 (Fla. 1976). In that case, the supreme court interpreted section 120.52(1)(a) and stated that the requirements of Chapter 120, the Administrative Procedures Act (APA), not only do not apply to the clemency powers conferred on the governor by the constitution but also do not apply to the clemency powers of "the members of the cabinet." Id. at 563. Clearly then, the court implicitly found that the cabinet members were included within the "[e]ach other state officer" language of subsection (1)(b) that was in existence at the time of the decision.
Moreover, we believe the Lieutenant Governor is also a part of this class. First, it can be inferred from the supreme court's advisory opinion that the legislature intended for the Lieutenant Governor to be included under section 120.52(1)(b). Id. at 562. Additionally, he too is a statewide executive officer as defined in article IV, section 2  thus the logical use of "state officer" instead of cabinet member in section 120.52(1)(b). Together, the Governor, Cabinet, and Lieutenant Governor make up the state officers of the executive branch of government. Art. IV, Fla. Const. We note that a major commentary on the Florida APA, A. England, Jr. and L.H. Levinson, Florida Administrative Practice Manual (D & S), § 9.03(3), p. 8 (1979 ed.)[25] refers to the other "executive officers" when discussing section 120.52(1)(b).
A further point which clearly demonstrates why appellant's argument must fail involves the examination of legislative intent behind the enactment of the current version of the Florida APA. Section 120.72, Florida Statutes (1981), provides, inter alia: "The intent of the Legislature in *1084 enacting this complete revision of chapter 120 is to make uniform the rulemaking and adjudicative procedures used by the administrative agencies of this state." First, a state attorney does not conduct adjudicatory proceedings, and, furthermore, it would be stretching the clear and plain meaning behind this language, State of Florida, Department of Health and Rehabilitative Services v. McTigue, 387 So.2d 454 (Fla. 1st DCA 1980), to hold that a state attorney is an administrative agency that is required to adopt rules and regulations as mandated by section 120.53. The procedural rules which govern the actions and proceedings of a state attorney are those promulgated by our supreme court.[26] Our research has found no rules or regulations adopted by appellant or any other state attorney in accordance with the APA. Therefore, we conclude that the "[e]ach other state officer" clause of subsection (1)(b) does not include a state attorney, whose jurisdiction is limited to a localized judicial circuit.[27]
Even assuming that appellant had been able to show that he is an "agency" within the meaning of section 120.52(1)(b), he still would not have any authority under section 120.69(1)(a) to institute a petition for enforcement of DER's rules and regulations. Under section 120.69(1)(a), only DER, the agency specifically designated by the legislature responsible for adopting and enforcing the rules and regulations allegedly violated in this case, has standing to file an action under that section. In our view, this is the clear meaning of the section.
Our holding is consistent with the Reporter's Comments that accompanied the Law Revision Council's 1974 revision of the APA. Comment (a) explains: "This provision enables any agency to seek judicial enforcement of its determinations, except as otherwise provided by statute." (Emphasis supplied).[28]See also England and Levinson, § 1602, p. 2 (1979 ed.) ("any agency may seek enforcement of its action by filing a petition in the circuit court where the subject matter of the enforcement is located.") (Emphasis supplied). Therefore, we hold only DER can sue under section 120.69(1)(a).[29]

CONCLUSION
Accordingly, we agree with the trial court's ultimate rulings and hold that a state attorney has no standing to independently initiate a section 403.141(1) civil action for damages and penalties against an alleged violator of Chapter 403, and a state attorney has no standing under section 120.69(1)(a) to file a petition for enforcement of the rules and regulations promulgated by DER in relation to Chapter 403.
AFFIRMED.
GRIMES, A.C.J., and SCHEB, J., concur.
NOTES
[1] By "independently initiated" we mean appellant was not directed by the Governor, the Attorney General, or the Department of Environmental Regulation (DER) to institute the action nor did he file the suit with the consent or approval of any of these state officials.
[2] Section 7 states: "It shall be the policy of the state to conserve and protect its natural resources and scenic beauty. Adequate provision shall be made by law for the abatement of air and water pollution and of excessive and unnecessary noise."
[3] Section 27.02 provides: "The state attorney shall appear in the circuit and county courts within his judicial circuit and prosecute or defend on behalf of the state all suits, applications, or motions civil or criminal, in which the state is a party... ."
[4] Article V, section 17 states:

In each judicial circuit a state attorney shall be elected for a term of four years. He shall be the prosecuting officer of all trial courts in that circuit and shall perform other duties prescribed by general law; provided, however, when authorized by general law, the violations of all municipal ordinances may be prosecuted by municipal prosecutors. A state attorney shall be an elector of the state and reside in the territorial jurisdiction of the circuit. He shall be and have been a member of the bar of Florida for the preceding five years. He shall devote full time to his duties, and he shall not engage in the private practice of law. State attorneys shall appoint such assistant state attorneys as may be authorized by law.
[5] See §§ 403.087(1); 403.161(1)(a), (b); Rules 17-4.02(3), (17); 17-4.03, 17-4.28(1)(3), Fla. Admin. Code.
[6] See § 403.161(1)(b); Rules 17-3.011(5); 17-3.091(13); 17-3.121(14); 17-3.161(3).
[7] This section, entitled the "Environmental Protection Act of 1971," provides, inter alia:

(2)(a) The Department of Legal Affairs, any political subdivision or municipality of the state, or a citizen of the state may maintain an action for injunctive relief against:
1. Any governmental agency or authority charged by law with the duty of enforcing laws, rules, and regulations for the protection of the air, water, and other natural resources of the state to compel such governmental authority to enforce such laws, rules, and regulations.
2. Any person, natural or corporate, governmental agency or authority to enjoin such persons, agencies, or authorities from violating any laws, rules or regulations for the protection of the air, water, and other natural resources of the state.
The act is commonly referred to as "little NEPA," the Florida version of the National Environmental Protection Act. See J. Kavanaugh & J. Quinlan, Federal, State, and Local Enforcement Procedures in Environmental Cases, Environmental Regulation and Litigation in Florida (CLE), chapter 24, p. 28 (1981 ed.).
[8] This provision states, in relevant portion: "A petition for enforcement of any agency action may be filed by any substantially interested person who is a resident of the state."
[9] See also § 403.081, Fla. Stat. (1981).
[10] "Installation" is defined as "any structure, equipment, facility, or appurtenances thereto, or operation which may emit air or water contaminants in quantities prohibited by rules of the department." § 403.031(8), Fla. Stat. (1981).
[11] See note 5.
[12] See note 6.
[13] See notes 3 and 4 respectively.
[14] See note 2.
[15] Such proceedings could involve petitions for writs of certiorari, mandamus, prohibition, or habeas corpus because these actions historically have always been within a prosecuting attorney's authority.
[16] See §§ 60.05(1); 83.761(4); 246.229; 286.011(4); 351.18; 380.11; 409.245; 496.13(6); 533.05; 540.02; 544.04; 545.08; 559.78; 559.813(4); 559.923(2); 585.195(5); 817.561(4); 849.0915(3), Fla. Stat. (1981). See also §§ 116.32; 210.12; 372.316; 523.14; 849.12; 932.704, Fla. Stat. (1981), (relating to state attorney's independent authority to bring various forfeiture proceedings on behalf of the state). The legislature has also specifically granted a state attorney authority to institute other civil actions on behalf of the state if an action is referred to or delegated to him by a particular state agency or official. See §§ 106.25(4)(a); 161.071; 206.07; 206.22; 207.022; 253.05; 402.17(5); 501.052; 526.10; 542.15; 585.36; 586.09(1), Fla. Stat. (1981).
[17] This provision, unchanged since 1972, sets forth a judicial remedy (civil penalties) available to DER for section 403.161(1) violations.
[18] As noted earlier in the text of the opinion and emphasized therein, section 403.121 specifically states in subsections (1)(a), (1)(b), and (2)(a) that "[t]he department may institute" the available actions. Section 403.131(1), Florida Statutes (1981), provides: "The department may institute a civil action... to seek injunctive relief." (Emphasis supplied). The unambiguous emphasis in these sections is on DER's authority to act on behalf of the state. See generally Kavanaugh & Quinlan, chapter 24, pp. 26-28.
[19] Additionally, we again note that a state attorney is not precluded from filing a public nuisance action against GDC. § 60.05(1), Fla. Stat. (1981); State ex rel. Shevin. We do not express any opinion as to whether a state attorney has standing under section 403.412.
[20] Because of this conclusion, we need not address GDC's argument that the case should be suspended or dismissed under the doctrine of "primary jurisdiction." Compare United States v. Western Pacific Railroad Co., 352 U.S. 59, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956) with Far East Conference v. United States, 342 U.S. 570, 72 S.Ct. 492, 96 L.Ed. 576 (1952); State ex rel. Shevin.
[21] Section 120.69(2) provides:

A petition for enforcement may request declaratory relief; temporary or permanent equitable relief; any fine, forfeiture, penalty, or other remedy provided by statute; any combination of the foregoing; or, in the absence of any other specific statutory authority, a fine not to exceed $1,000.
[22] Appellant does not contend, nor could he successfully, that a state attorney is included under subsection (1)(c).
[23] The Cabinet includes the Attorney General, the Secretary of State, the Comptroller, the Treasurer, the Commissioner of Agriculture, and the Commissioner of Education. Art. IV, § 4, Fla. Const.
[24] First of all, "state officer" is nowhere defined in Chapter 120. Giving the term a literal interpretation, however, is untenable in light of the focus of the provision. Under the broad construction advanced by appellant, every individual law enforcement officer (e.g., state trooper, parole and probation officer, agricultural and road guard inspectors, etc.) would be deemed an "agency" under section 120.52(1)(b). Furthermore, what would preclude, under appellant's view, a public defender from suing pursuant to the APA? We decline to give the statutory phrase in question such an absurd interpretation. Cf. Griffis v. State, 356 So.2d 297 (Fla. 1978); Austin v. State ex rel. Christian, 310 So.2d 289 (Fla. 1975).
[25] While the 1974 revision of the APA was being prepared by the Florida Law Revision Council pursuant to its authority under Chapter 67-472, Laws of Florida, former Supreme Court Justice England, prior to his joining the court, served as its reporter, and Professor Levinson served as chairman of the Council's administrative law committee which supervised the revision.
[26] Art. V, §§ 2(a), 15.
[27] Because of our holding that the legislature has excluded state attorneys under section 120.52(1)(b), we need not address GDC's contention that state attorneys are expressly excluded by section 120.50(2).
[28] In Lewis v. Judges of the District Court of Appeal, 322 So.2d 16 (Fla. 1975), and In re Advisory Opinion of the Governor, the supreme court emphasized the "historical relevance of the Law Revision Council's draft statutes and accompanying commentary" as extrinsic aids to interpreting the 1974 revision of the APA. In re Advisory Opinion at 562.
[29] We express no opinion as to whether appellant has standing under section 120.69(1)(b).