ERVIN, Acting Chief Judge.
The Division of Florida Land Sales of the Department of Business Regulation (the Division) appeals a circuit court order temporarily enjoining it from withholding funds allegedly due Communities Financial Corporation (CFC) from the Division’s improvement trust fund. The trust fund was created in improvement trust agreements which the parties entered into pursuant to what is currently Section 478.052, Florida Statutes (1977), after the Division had approved CFC’s proposal and offering statement to sell 22 square miles of land in Okeechobee County as a subdivision of one and one-quarter acre lots. In its registration under Chapter 478, CFC had informed the Division in 1971, that both the Department of Pollution Control and the Department of Natural Resources had stated they had no regulatory responsibilities over the proposed project. Under Section 478.052, the trust agreements were to be an assurance to lot purchasers that improvements promised in the offering statement — drainage and all-weather stabilized roads — would in fact be completed. CFC’s contracts with lot purchasers promised completed improvements by December 31, 1979.
The trust agreements provided uniformly that a percentage of CFC’s gross receipts from lot sales would be deposited into the improvement trust fund “for the purpose of protecting the purchasers” and that CFC could withdraw funds
only in accordance with the written approval and instructions of the Division, provided, however, that if said improve *791 ments are completed . . . and upon evidencing to the Division that [they] are paid for in full [CFC] shall have the immediate right to withdraw all of said funds and said Division may not withhold approval.
Fla.Admin.Code R. 7D-6.02 governs improvement trust agreements generally and provides that when money in the trust account equals 100% of the cost of completing improvements, the subdivider may stop making deposits and withdrawals will be allowed to the extent that not “less than 110% of the projected cost of uncompleted promised improvements” remains in the account. The rule further provides that the Division may require “additional or substitute assurances if, in [its] judgment, there has been a material change in the subdivider’s commitment to complete promised improvements.”
Presently, 80% of the lots have been sold and nearly half of those have been fully paid. CFC began construction of the improvements in 1972, financing by corporate funds until 1977, when it began financing the improvements through periodic releases from the trust fund.
Notwithstanding the position its predecessor, Department of Pollution Control, had taken in 1971 regarding regulatory jurisdiction over the project, the Department of Environmental Regulation began communication with CFC in June, 1977, informing the latter that the project might fall within its permit jurisdiction. Three months later DER stated permits would be required, and within 45 days, CFC received DER’s Letter of Notice that the project violated Chapter 403 and requesting CFC to cease construction. After 18 months, on June 1, 1979, DER sent its Notice of Violation to CFC. The Division requested “additional assurances” from CFC that DER’s assertion of permit jurisdiction was not a “material change” in CFC’s commitment to complete the improvements. When CFC could not assure that either the projected cost of the improvements or their completion date was unaffected by DER’s action, the Division refused to allow further withdrawals from the fund.
CFC sought temporary and permanent injunctions against DER and the Division, and the trial judge temporarily enjoined the Division from withholding the funds, finding that CFC’s “rights to withdraw the escrow funds are defined in the escrow agreements . . . and are unrelated to environmental considerations,” and that the Division’s decision to stop releases from the trust because of DER’s unrelated action, was unlawful.[1]
The Division argues that CFC was not entitled to a temporary mandatory injunction because the improvement trust agreements grant CFC an absolute right to the trust funds only after the improvements are completed and fully paid for. We agree with the Division that, under these circumstances, CFC’s right to withdraw funds from the trust without the Division’s approval is not “clear and free from reasonable doubt.” Montgomery Pipe and Tube Company of Florida v. Mann, 205 So.2d 660, 661 (Fla.3d DCA 1968). Under Fla.Admin. Code R. 7D-6.02, it is within the Division’s discretion to determine when a “material change in the subdivider’s commitment to complete promised improvements” has taken place and, consequently, to require the subdivider to make “additional or substitute assurances.” Here, DER’s assertion of permit jurisdiction over the improvements left the estimated cost of completing the improvements, and the basis for release of the funds under the Rule, in doubt. CFC’s argument, that the Division may not withhold funds unless and until DER has issued an order adverse to it after administrative proceedings, merely takes issue with the Division’s policy in interpreting its rule.
Wilson v. Sandstrom, 317 So.2d 732 (Fla.1975), cited by CFC, is not on point. In that case, the trial court issued a temporary mandatory injunction to force compliance with an unambiguous contract. Here, the *792 parties are subject not only to a contract, but to the Division’s rules and its policies in their enforcement. This is not one of those “rare cases where the right [to a mandatory injunction] is clear and free from reasonable doubt” before trial. Montgomery Pipe and Tube Company, supra at 661.
The order granting the temporary injunction is reversed and appellee shall have five days from the filing of this court’s opinion in which to seek rehearing.
LARRY G. SMITH, J., concurs.
WENTWORTH, J., dissents.

. CFC was not granted temporary relief from DER’s Notice of Violation because construction of the improvements was continuing.