416 So.2d 813 (1982)
COMMUNITIES FINANCIAL CORPORATION, a Florida Corporation, and Coquina Water Management District, Appellants,
v.
FLORIDA DEPARTMENT OF ENVIRONMENTAL REGULATION, Appellee.
No. AE-52.
District Court of Appeal of Florida, First District.
April 15, 1982.
Motion for Rehearing and Clarification Granted in Part, Denied in Part June 24, 1982.
*814 Gary P. Sams of Hopping, Boyd, Green & Sams, Tallahassee, and Dana G. Bradford, II, of Mahoney, Hadlow & Adams, Jacksonville, for appellants.
Alfred J. Malefatto and Randall E. Denker, Asst. Gen. Counsels, Tallahassee, for appellee.
McCORD, Judge.
Communities Financial Corporation (CFC) and Coquina Water Management District appeal from a final summary judgment which, among other things, denied their claim for attorney's fees under Sections 57.105 and 120.69(7), Florida Statutes. The State of Florida, Department of Environmental Regulation (DER), cross-appeals from that judgment. DER urges error in the trial court's failure to dismiss CFC's and Coquina's complaint for failure to exhaust administrative remedies, in the trial court's dissolving of a temporary injunction and failing to make that injunction permanent, and in the trial court's award of costs to CFC and Coquina.
CFC is a Florida corporation engaged in the subdivision and sale of real property. In 1971 it purchased approximately twentytwo square miles of real property in Okeechobee County, which property it proposed to sell as individual one and one-fourth acre lots. The development of that land is the subject of this appeal. Coquina was organized under Chapter 298, Florida Statutes, to handle the drainage activities on that plan.
In 1971 and 1972 CFC registered the lots for sale with the Division of Land Sales and Condominiums (Land Sales). At this time CFC contacted DER's predecessor agency, the Department of Pollution Control (DPC), regarding the necessity to obtain permits to develop the property. Upon reviewing CFC's plans, DPC indicated that it had no regulatory responsibilities regarding the project. However, DPC asked to be advised regarding the specific details of the drainage techniques to be used.
Once Land Sales had approved the project, CFC began to solicit purchases, committing itself to complete the required *815 road and drainage improvements by December 31, 1979. Land Sales and CFC established escrow accounts to be funded by purchase money in order to insure that the promised improvements would be completed on schedule. In 1974, CFC and Coquina submitted plans for the surface water management system to the South Florida Water Management District (SFWMD). After several years of analysis, inspection of the site, and a public hearing, SFWMD granted conceptual approval of the drainage plan for the development in 1977. Finally, on March 15, 1979, a construction permit for the westernmost seven sections of the project was issued by SFWMD. Basically, this drainage system consists of a series of connected swales which empty into several sloughs: Ash, Gore, and Company.
Meanwhile, in response to an inquiry concerning land sales matters from the United States Department of Housing and Urban Development, a DER staff member conducted a critical review of the entire project. This review led to a series of warning letters from DER, commencing June 23, 1977, in which DER asserted that CFC and Coquina required permits for their dredging and filling in waters of the state. CFC and Coquina maintained throughout that DER did not have permit jurisdiction. When negotiations broke down, DER issued an administrative complaint on June 1, 1979.
Prior to filing the administrative complaint, DER had informally urged Land Sales to withhold approval for CFC's withdrawal of the construction funds from escrow. Land Sales, at first, refused to do so because DER had taken no formal action to establish its position. However, in November of 1978 it began withholding approval. Then, on April 30, 1979, Land Sales informed DER that it would not continue to withhold funds unless DER took direct action to assert its position.
On July 12, 1979, CFC answered DER's administrative complaint and requested a formal hearing pursuant to Section 120.57(1), Florida Statutes, before the Division of Administrative Hearings (DOAH). On the same day, CFC filed a complaint for declaratory judgment, injunctive relief, and damages against DER and Land Sales. DER, in turn, filed a counterclaim, essentially realleging the elements of its administrative complaint. DER also sought a temporary injunction halting CFC's and Coquina's construction activities. CFC's complaint against Land Sales was essentially directed toward Land Sales' refusal to grant approval for release of the escrow funds. To this end, CFC sought and obtained from the trial court a temporary injunction barring Land Sales from withholding its approval to release the funds. Land Sales appealed, and this Court dissolved the temporary injunction, essentially holding that the injunction was not appropriate because the matters involved were not free from all doubt. In particular, this Court noted DER's continued assertion of jurisdiction over certain activities on the site. Burroughs v. CFC, 378 So.2d 790 (Fla. 1st DCA 1979). Meanwhile, in response to conflicting evidence adduced at a hearing regarding violations of Chapter 403, Florida Statutes, and Chapter 17, Florida Administrative Code, the trial court enjoined CFC from any future violations of the turbidity standard [Fla. Admin. Code Rule 17-3.05(2)(d)] for water flowing from the land. The trial court took no further action, deferring to a decision by DOAH on the merits of the administrative complaint.
On March 14, 1980, a DOAH hearing officer issued a recommended order that the administrative complaint be dismissed in its entirety. Essentially, the hearing officer found that DER had not proven that the dredging and filling activities of CFC in constructing the drainage system took place in waters of the state subject to DER's jurisdiction. DER adopted the hearing officer's findings of fact and conclusions of law in toto. Upon receiving DER's final order, the trial court enjoined DER from attempting to exercise its permit jurisdiction, dissolved the temporary injunction against CFC and Coquina, enjoined Land Sales from withholding approval of the release of the escrowed funds, denied CFC's motion for attorney's fees under Sections *816 57.105 and 120.69(7), and ordered DER to pay various costs.
The primary consideration presented by this appeal is whether the trial court erred in refusing to dismiss the complaint because of CFC's failure to exhaust its administrative remedies. We find that it did. It is now well settled that where adequate administrative remedies are available, it is improper to seek relief in the circuit court before those remedies are exhausted. E.g. Friends of the Everglades v. State Dept. of Environmental Regulation, 387 So.2d 511 (Fla. 1st DCA 1980); School Board of Leon County v. Mitchell, 346 So.2d 562 (Fla. 1st DCA 1977); School Board of Flagler County v. Hauser, 293 So.2d 681 (Fla. 1974).[1] One exception to this doctrine, which CFC claims, is where agency actions are so egregious or devastating that the promised administrative remedies are too little or too late. State ex rel. Department of General Services v. Willis, 344 So.2d 580 (Fla. 1st DCA 1977); School Board of Leon County v. Mitchell, supra. In Willis, this Court set forth certain criteria which, if met, would invoke the jurisdiction of the circuit court in such cases: (1) the complaint must demonstrate some compelling reason why the APA (Chapter 120, Florida Statutes) does not avail the complainants in their grievance against the agency; or (2) the complaint must allege a lack of general authority in the agency and, if it is shown, that the APA has no remedy for it; or (3) illegal conduct by the agency must be shown and, if that is the case, that the APA cannot remedy that illegality; or (4) agency ignorance of the law, the facts, or public good must be shown and, if any of that is the case, that the Act provides no remedy; or (5) a claim must be made that the agency ignores or refuses to recognize related or substantial interests and refuses to afford a hearing or otherwise refuses to recognize that the complainants' grievance is cognizable administratively. Id., at 591.
The case made by appellants did not meet any of these criteria. CFC and Coquina urge that a circuit court is the only forum in which they could seek relief against both Land Sales and DER. It is clear, however, that Land Sales' action in withholding approval for release of the escrow funds is an "agency action" [§ 120.52(2), Fla. Stat.] which would be subject to a Section 120.57(1) or (2) petition for administrative hearing. See Willis, supra. Further, a petition for declaratory statement pursuant to Section 120.565, Florida Statutes, may well have been an appropriate avenue for relief. Thus, the absence of any claim that Land Sales refused to afford CFC and Coquina an administrative hearing or otherwise refused to recognize that their grievances were administratively cognizable undermines the very assertion that the APA has no adequate remedy. Moreover, since Land Sales based, at least in part, its disapproval on DER's dispute with CFC and Coquina, they could easily have subpoenaed DER employees to account in such a hearing before Land Sales. Such a hearing could well have been consolidated with the hearing on DER's administrative complaint. Fla. Admin. Code Rule 28-5.106. Since such avenues of relief were not pursued, we cannot conclude that the remedies of the administrative process were inadequate.
CFC also alleged that the numerous and complex legal and factual issues regarding DER's jurisdiction, the timeliness and efficacy of its agency action, and the propriety of applying certain statutory and regulatory standards necessitates circuit court intervention. Such an allegation, without more, undermines the very purposes of the APA, for it presupposes that a circuit court is a more appropriate forum for resolution of disputes which are particularly within the administrative agency's expertise. See McDonald v. Dept. of Banking & Finance, 346 So.2d 569 (Fla. 1st DCA 1977). Additionally, *817 in light of the ready acceptance of a DOAH hearing in order to resolve such legal and factual disputes between the parties, CFC's and Coquina's argument is unconvincing.
CFC also alleged that circuit court intervention was appropriate because CFC needed a timely remedy so as not to disrupt existing contractual relationships. However, it did not allege, much less prove, that adequate financial resources were not readily and reasonably available from alternate sources, such as CFC's own internal financial structure. The failure to make such an allegation, or any other specific and compelling reason regarding their argument for timely relief, precludes the circuit court's intervention. Rather, it would seem that the impressive array of APA procedures would provide a more timely and efficacious remedy than resort to the procedures of regular civil practice.
We, therefore, hold that the trial court erred in failing to dismiss the complaint because of the appellants' failure to exhaust their administrative remedies.[2] Lest this be considered an academic gesture, we point out that the trial court assessed substantial costs against DER. Since the case should have been dismissed, the assessment of costs cannot stand.
Our resolution of the exhaustion of administrative remedies issue raised by DER's motion disposes of all the other issues, with the exception of DER's argument regarding the trial court's dissolution of and refusal to extend an injunction to prohibit CFC and Coquina from violating turbidity standards. The hearing officer noted, and the evidence of record establishes, that the turbidity readings in excess of state standards were attributable to construction activities alone and would not be expected to continue after completion of construction. These isolated instances do not make CFC and Coquina such egregious violators of the law that DER must be informed of what they are doing on every occasion.
Accordingly, this cause is reversed and remanded to the trial court with directions that the final summary judgment be vacated and the cause be dismissed.
ERVIN and SHAW, JJ., concur.

ON MOTION FOR REHEARING AND CLARIFICATION
McCORD, Judge.
Communities Financial Corporation (CFC) and Coquina Water Management District (Coquina) move for rehearing and clarification of the decision in this cause. Although we do not recede from the holding of our opinion, we do find it appropriate to address and clarify certain matters.
CFC's and Coquina's first contention is that they met the criteria set forth in State ex rel. Department of General Services v. Willis, 344 So.2d 580 (Fla. 1st DCA 1977), and should therefore be exempted from the requirement of exhausting their administrative remedies. In particular, they take issue with the finding of the court that they "did not allege, much less prove that adequate financial resources were not readily and reasonably available from alternate sources, such as CFC's own internal financial structure." Their recitation of certain portions of the record, however, does not support their claim. The complaint does not allege, nor does it reasonably imply, that "adequate financial resources were not readily and reasonably available from alternate sources, such as CFC's own internal financial structure." What it did allege is that its ability to finance required improvements and its development would be "impaired," which is hardly the same thing. Thus, the complaint on its face fails to make sufficient allegations to support the circuit court's intervention in the administrative process.
*818 CFC and Coquina also argue that they offered proof to establish that sufficient financial resources other than the escrow funds held by the Division of Land Sales and Condominiums were unavailable to CFC for the purpose of fulfilling its contractual obligations to land purchasers. In support of this argument they cite the affidavit of the chairman of the board and chief executive of CFC's parent corporation. There, he stated that (CFC) "does not have the immediate financial resources to satisfy the total amount of colorable claims and obligations... ." arising out of its promise to deliver improved lots by December 31, 1979. Just because funds are not immediately available, however, does not mean that those funds will not become available in a timely fashion. Moreover, even if such funds were not available within CFC's internal financial structure, appellants are still ignoring the true import of this court's holding, which is that they failed to "allege, much less prove, that adequate financial resources were not readily and reasonably available from alternate sources," not just from CFC itself. (Emphasis supplied). We also note that the record affirmatively establishes that CFC knew that the intent and purpose of the escrow funds was not to be a construction funding account but was to protect the purchasers of the lots. See Burroughs v. Communities Financial Corporation, 378 So.2d 790 (Fla. 1st DCA 1979).
Appellants' remaining points, with one exception, are merely attempts to reargue issues already decided. However, we do agree with appellants' contention that the trial court's permanent injunction against the Division of Land Sales and Condominiums should not be vacated because Land Sales did not appeal the trial court's final summary judgment. Accordingly, this court's opinion is hereby amended to reflect this fact.
Appellants' Motion for Rehearing and Clarification granted in part and denied in part.
ERVIN and SHAW, JJ., concur.
NOTES
[1] We note that this is not a jurisdictional question:

The determination of whether the circumstances of a particular controversy warrant judicial intervention [by a circuit court], then is ultimately one of policy rather than power... .
Gulf Pines Memorial Park, Inc. v. Oaklawn Memorial Park, Inc., 361 So.2d 695, 699 (Fla. 1978).
[2] DER's counterclaim in no way affects our resolution of this issue. Since this pleading patently constitutes a compulsory counterclaim [Fla.R.Civ.P. 1.170(a)], DER's failure to so plead may well have abrogated any rights it had to litigate the issues contained in the counterclaim at some future date.