536 So.2d 1119 (1988)
ST. JOE PAPER Company, a Florida Corporation, St. Joseph Land and Development Company, a Florida Corporation, and Jacksonville Properties, Inc., a Florida Corporation, Appellants,
v.
FLORIDA DEPARTMENT OF NATURAL RESOURCES, Appellee.
No. 87-1929.
District Court of Appeal of Florida, First District.
December 21, 1988.
Rehearing Denied January 30, 1989.
*1120 Fred H. Kent, Jr., of Kent, Hayden, Facciolo and McMorrow, Jacksonville, for appellants.
Robert A. Butterworth, Atty. Gen., and Eric J. Taylor, Asst. Atty. Gen., and Dana Wiehle, Asst. Gen. Counsel, Dept. of Natural Resources, Tallahassee, for appellee.
BARFIELD, Judge.
Appellants (collectively referred to as "St. Joe" herein) challenge the circuit court's order dismissing their complaint for lack of subject matter jurisdiction based upon their failure to exhaust administrative remedies. We affirm the dismissal of the complaint.
In 1970, the Florida Legislature enacted section 161.052, Florida Statutes, prohibiting certain construction activities "within 50 feet of the line of mean high water at any riparian coastal location fronting the Gulf of Mexico or Atlantic coast shoreline of the state, exclusive of bays, inlets, rivers, bayous, creeks, passes, and the like." In 1971, the legislature enacted section 161.053, which directed the Department of Natural Resources ("the Department") to establish Coastal Construction Setback Lines (CCSL) "on a county basis along the sand beaches of the state fronting on the Atlantic Ocean and the Gulf of Mexico" for the purpose of protecting the state's beaches and adjacent coastal area dunes from imprudent construction. Chapter 78-257, Laws of Florida, changed the nomenclature to Coastal Construction Control Lines (CCCL).
A CCCL, established only after a comprehensive engineering study and a topographic survey have shown it to be necessary for the protection of upland properties and control of beach erosion and then only after a public hearing, defines "that portion of the beach-dune system which is subject to severe fluctuations based on a 100-year storm surge, storm waves, or other predictable weather conditions," § 161.053(1), Fla. Stat. (1985). Upon establishment, the CCCL is recorded in the public records of the county and thereafter, "no person, firm, corporation, or governmental agency shall construct any structure whatsoever seaward thereof; make any excavation, remove any beach material, or otherwise alter existing ground elevations; drive any vehicle on, over, or across any sand dune; or damage or cause to be damaged such sand dune or vegetation growing thereon seaward thereof, except as hereinafter provided" *1121 (i.e., by permit from the Department), § 161.053(2).
While the public hearing on the proposed CCCL must satisfy all the requirements of section 120.54(3), Florida Statutes, the legislature has provided that the rule establishing the CCCL "shall not be subject to a s. 120.54(4) rule challenge or a s. 120.54(17) drawout proceeding, but, once adopted, shall be subject to a s. 120.56 invalidity challenge." The Department explains that this indicates a clear legislative intent to provide a smooth, uninterrupted procedure for adoption of control lines (by prohibiting those rule challenge proceedings which would normally occur prior to the final adoption of a rule) and to provide for a rule challenge under section 120.56 once the CCCL is established, reviewable by the district courts of appeal under section 120.68, Florida Statutes.
Under section 161.053(2), any landowner "who feels that such line as established is unduly restrictive or prevents a legitimate use of his property shall be granted a review of the line upon written request" and the Department's decision "shall be subject to judicial review as provided in chapter 120." The Department points out that a landowner denied the right to use his land in the manner he desires may also challenge the denial of a building permit under section 120.57, that agency decision also reviewable by the district courts of appeal.
The property involved in this dispute lies between Port St. Joe and St. Joe Beach in Gulf County, and was at one time owned by St. Joe Paper Company and its subsidiary, St. Joseph Land and Development Company. As part of a 1985 corporate restructuring, this property was conveyed to another subsidiary of St. Joe, Jacksonville Properties, Inc., which now holds title.
The Gulf County CCCL was originally established in 1975 and was reestablished in 1986 by Florida Administrative Code Rule 16B-26.016. According to the rule, which was recorded in the Gulf County public records, "a permit to alter, excavate or construct on property seaward of the established control line is required from the Department of Natural Resources."
St. Joe had opposed the initial CCCL and again opposed the extension of the line farther inland in 1986, asserting that the Department did not have jurisdiction to impose a CCCL on its land because the property does not "front on the Gulf of Mexico."[1] The CCCL was adopted by the Cabinet on February 4, 1986, and was recorded in the Gulf County public records the next day.
St. Joe then filed a complaint for declaratory judgment in the Gulf County Circuit Court, alleging that the Department lacked jurisdiction over its property, that the study used to establish the line was "arbitrary and speculative" and was not applied uniformly and "shows on its face that there *1122 is no need for a coastal construction control line," that the public hearing violated its due process rights, and that the Department had established "easements" on its property. St. Joe requested the court to declare the Department to be without jurisdiction over its lands, or alternatively, to declare the CCCL to be "improperly imposed" on its lands, and to "quiet title" to its lands as to the "easements" imposed by the Department.
The Department moved to dismiss the complaint for improper venue, or in the alternative, to transfer venue to Leon County. It also moved to dismiss the complaint for lack of jurisdiction, asserting that St. Joe had failed to exhaust its administrative remedies and that the case was not in fact a true quiet title action. In St. Joe Paper Company v. Florida Department of Natural Resources, 507 So.2d 717 (Fla. 1st DCA 1987), this court reversed the circuit court's order granting the motion to transfer venue. The circuit court then dismissed the complaint for lack of jurisdiction, finding that St. Joe had failed to exhaust the available administrative remedies.
The question presented here is one of judicial policy, not judicial jurisdiction. As this court noted in State ex rel. Department of General Services v. Willis,
Using historic injunctive powers the Constitution commits to them as courts of equity, circuit courts had and exercised jurisdiction to enjoin administrative action long before the power to enjoin was endorsed by the 1961 Administrative Procedure Act.
The general power to enjoin thus continues, but it continues subject to judicial restrictions on its use which require prior resort to and exhaustion of administrative remedies when they are available and adequate. The companion doctrines of primary jurisdiction and exhaustion of administrative remedies are not statutory creatures but judicial, together constituting a "doctrine of self-limitation which the courts have evolved, in marking out the boundary lines between areas of administrative and judicial action." The one counsels judicial abstention when claims otherwise cognizable in the courts have been placed within the special competence of an administrative body; the other, when available administrative remedies would serve as well as judicial ones. Even though the legislative power may not presume to characterize an adequate administrative remedy as "exclusive," courts will so regard it.
344 So.2d 580, 589 (Fla. 1st DCA 1977) (citations omitted).
Under this doctrine, the circuit court cannot be said to have lacked subject matter jurisdiction in this case, but only to have chosen to abstain from exercising that jurisdiction in deference to the administrative process. The court's dismissal of the complaint based upon St. Joe's failure to exhaust administrative remedies was therefore proper unless St. Joe did not have available to it an adequate administrative remedy.
St. Joe argues that the provision of section 161.053(2) permitting challenge of the CCCL under section 120.56 must be read in pari materia with the last sentence of section 120.56(5), which states that "failure to proceed under this section shall not constitute failure to exhaust administrative remedies." The Department points out, however, that in Willis and in 4245 Corporation, Mother's Lounge, Inc. v. Division of Beverage, 348 So.2d 934 (Fla. 1st DCA 1977), this provision has been construed as having been addressed not to circuit courts but to district courts of appeal, indicating a legislative purpose "to avoid any appearance of requiring a substantially affected party to initiate duplicative 120.54 or .56 proceedings if his rule challenge is regularly presented with other grievances under 120.57, resulting in final agency action and a petition for judicial review," and was meant to "enhance remedies available under the Act rather than encouraging circuit court intrusion into the administrative process." Willis, 344 So.2d at 592.
St. Joe asserts that it needed to obtain an interpretation of section 161.053(1) which defines the Department's jurisdiction to establish a CCCL "along the sand beaches of *1123 the state fronting on the Atlantic Ocean or the Gulf of Mexico" and needed to remove the cloud upon its title imposed by the Department's "easement" over its land under section 161.053(2). It contends that an administrative proceeding under chapter 120 could not afford it the equitable relief it sought because only the circuit court could quiet its title[2] and declare its rights under a statute,[3] and that to require it to seek one of the available administrative remedies before seeking to quiet title in the circuit court would require duplicative or futile actions.[4] However, the question is not whether the particular judicial remedy sought is also available administratively, but whether there is available an administrative remedy which would serve as well as the judicial one.
St. Joe has characterized the remedy it seeks as an action to "quiet title" to its land in order to remove "easements" imposed by the Department's rule. An easement has been defined as:
a privilege without profit, which the owner of one tenement has a right to enjoy in respect to that tenement in or over the tenement of another person, whereof the latter is obliged to suffer or refrain from doing something on his own tenement for the advantage of the former.
Burdine v. Sewell, 92 Fla. 375, 109 So. 648 (1926). It is considered an interest and *1124 limitation on the fee simple estate. The Florida Bar, Real Property, Title Examination and Insurance in Florida, Second Edition (1988), at p. 165.
The CCCL does not constitute a cloud on St. Joe's legal title or possessory interest, and does not entitle the Department or the State of Florida or its citizens to use St. Joe's property. It does constitute a limitation on St. Joe's use of the property, in the nature of a zoning ordinance. The fact that the document designating the property use limitation is recorded by the same office which records deeds and other instruments affecting title does not diminish St. Joe's title or possessory rights, nor set up a competing claim for ownership or possessory interests. The remedy for this type of property use limitation is a challenge to the ordinance or rule, and review of the resulting determination by the appellate courts, not an action to "quiet title."
Notwithstanding its characterization of the remedy it seeks, St. Joe's complaint is actually with the factual determination that its lands "front on the Gulf of Mexico" within the legislative intent of section 161.052, and with the resulting conclusion that the Department has jurisdiction under that statute to establish the CCCL on its property. It asserts that its allegation that the property fronts on St. Joseph's Bay is deemed admitted for purposes of the motion to dismiss, and that since there is no statute authorizing the Department to establish a CCCL on land fronting on bays or rivers, the agency is acting illegally (outside the scope of its delegated authority) and is therefore subject to the jurisdiction of the courts, citing State Department of Environmental Regulation v. Falls Chase Special Taxing District, 424 So.2d 787 (Fla. 1st DCA 1982), pet. for rev. denied, 436 So.2d 98 (Fla. 1983).
In Falls Chase, an evenly split en banc court upheld the majority panel opinion that the circuit court had jurisdiction to entertain a suit for declaratory relief in a complaint asserting that the agency had exceeded its statutory grant of authority and did not have jurisdiction to regulate dredge-and-fill activities on certain land. The majority acknowledged that "[o]nly in exceptional cases may the courts assume jurisdiction to render declaratory and/or injunctive relief without requiring exhaustion of administrative remedies" and that "judicial intervention with administrative action is justified only in those instances where the invalidity of the administrative act is not subject to reasonable differences of opinion," but held that "when an agency acts without colorable statutory authority that is clearly in excess of its delegated powers, a party is not required to exhaust administrative remedies before seeking judicial relief." 424 So.2d at 794-96 (emphasis in the original).
While we are not in a position to determine whether the Department of Natural Resources is authorized by Chapter 161 to establish a coastal construction control line on St. Joe's property, we cannot say that the Department's claim of jurisdiction is "without colorable statutory authority," or that it has acted "clearly in excess of its delegated powers," or that the question of the validity of the Department's action is "not subject to reasonable differences of opinion," so as to justify an exception to the judicially created doctrine of exhaustion of administrative remedies. We therefore conclude that the Department should be allowed to make the initial decision regarding the merits of the jurisdictional issue. See Department of Professional Regulation, Florida State Board of Medicine v. Marrero, 536 So.2d 1094, 1095-1096 (Fla. 1st DCA 1988), and cases cited therein.
The Department correctly points out that several administrative remedies, reviewable by this court, are available to St. Joe by which it may seek to remove the restrictions on the use of its property imposed by the CCCL: a rule challenge under section 120.56, on the ground that imposition of the CCCL is an invalid exercise of delegated legislative authority; a review of the CCCL as it affects St. Joe's property, authorized by section 161.053(2); or a section 120.57 challenge of the Department's denial of any permit it may seek. In each case, the *1125 agency's decision would be reviewable by this court under section 120.68, Florida Statutes. St. Joe might also have sought a declaratory statement under section 120.565 regarding the applicability of section 161.053 to its land, which would have been reviewable by this court. Communities Financial Corporation v. Department of Environmental Regulation, 416 So.2d 813 (Fla. 1st DCA 1982); Falls Chase, J. Smith's dissent, 424 So.2d at 804.
A successful rule challenge under section 120.56 would result in a modified rule eliminating the part of the CCCL imposed on St. Joe's property, which would then be recorded in the Gulf County public records. A successful review of the CCCL under section 161.053(2) would also result in a modified rule, as would a declaration of the Department's opinion, under section 120.565, that section 161.053 is not applicable to St. Joe's property, or this court's reversal of a contrary declaration.
In Communities Financial Corporation, this court ruled that the circuit court should have dismissed a complaint for declaratory and injunctive relief which was based upon the agency's alleged lack of dredge-and-fill permit jurisdiction, because of CFC's failure to exhaust its administrative remedies. The court rejected CFC's claim of an exception to the doctrine, "where agency actions are so egregious or devastating that the promised administrative remedies are too little or too late," pointing out that CFC did not meet any of the Willis criteria for invoking circuit court jurisdiction in such cases:
(1) the complaint must demonstrate some compelling reason why the APA (Chapter 120, Florida Statutes) does not avail the complainants in their grievance against the agency; or (2) the complaint must allege a lack of general authority in the agency and, if it is shown, that the APA has no remedy for it; or (3) illegal conduct by the agency must be shown and, if that is the case, that the APA cannot remedy the illegality; or (4) agency ignorance of the law, the facts, or public good must be shown and, if any of that is the case, that the Act provides no remedy; or (5) a claim must be made that the agency ignores or refuses to recognize related or substantial interests and refuses to afford a hearing or otherwise refuses to recognize that the complainants' grievance is cognizable administratively.
416 So.2d at 816 (emphasis supplied). The court also rejected CFC's allegation that "the numerous and complex legal and factual issues regarding DER's jurisdiction, the timeliness and efficacy of its agency action, and the propriety of applying certain statutory and regulatory standards" necessitated circuit court intervention, noting:
Such an allegation, without more, undermines the very purpose of the APA, for it presupposes that a circuit court is a more appropriate forum for resolution of disputes which are particularly within the administrative agency's expertise.
Id.
St. Joe has not demonstrated that it cannot obtain adequate relief from the administrative remedies available to it. The circuit court's dismissal of the complaint based upon St. Joe's failure to exhaust its administrative remedies is therefore AFFIRMED.
SMITH, Chief Judge, and ZEHMER, J., concur.
NOTES
[1] The minutes of the January 21, 1986, Cabinet meeting indicate that St. Joe objected to the reestablishment of the control line on its property "since the Department of Natural Resources did not have legal jurisdiction in St. Joseph Bay" and that it had previously objected to the establishment of the line in 1974. Dr. Robert Dean, Director of the Division of Beaches and Shores, explained the rationale for including the area in the CCCL. Andrew Grayson, Assistant General Counsel for the Department, stated that he and the general counsel had carefully looked at this issue, that the Department has a responsibility to interpret the statutes under its jurisdiction, and that "this was a reasonable interpretation." George Firestone requested that the Department's legal staff, cooperating with the Attorney General and his staff, do some legal research on the issue.

The minutes of the February 4, 1986 Cabinet meeting indicate that, in response to St. Joe's assertion that the Department did not have jurisdiction over its lands lying on St. Joseph's Bay, Dr. Dean asserted that the area was "interconnected with the adjacent shoreline, that is, the sand flows in the area of 15-31 [St. Joe's land], from the north to the south, and then that sand deposits out in response to the shelter provided by St. Joe's spit in an area around Range 31-32" and that, from a technical viewpoint, "this was an interconnected system in terms of littoral processes with the adjacent areas; and second, there were beaches and dunes present, and the intent of chapter 161 was to preserve them." Grayson explained why the Department had jurisdiction "in these cases." Attorney General Jim Smith "stated that he had questions about the Department's position and had his staff examine this issue from a legislative intent-jurisdiction question, and he was assured that the Department's interpretation was correct."
[2] Article V, section 20(c)(3): "Circuit courts shall ... have exclusive original jurisdiction in all actions at law not cognizable by the county courts; ... in all cases in equity ... and in all actions involving the titles and boundaries or right of possession of real property... ."; sections 65.011 and 65.021, Florida Statutes, give circuit courts jurisdiction of actions "against any person or corporation not in actual possession, who has, appears to have or claims an adverse legal or equitable estate, interest, or claim" to quiet or remove clouds from the title to the land.
[3] Section 86.011 provides that the circuit court has jurisdiction over actions for declaratory judgments, and section 86.021 gives the court the power to determine the rights, status, or other equitable or legal relations affected by a statute, or any regulation made under statutory authority.
[4] St. Joe argues that the legislature did not intend chapter 120 to replace or restrict the jurisdiction of circuit courts, citing section 120.73: "Nothing in this chapter shall be construed to repeal any provision of the Florida Statutes which grants the right to a proceeding in the circuit court in lieu of an administrative hearing or to divest the circuit courts of jurisdiction to render declaratory judgments under the provisions of chapter 86." The Department asserts that this section does not allow a party to avoid an administrative proceeding by attempting to disguise it as a declaratory judgment.

In Willis, the court determined that the enactment of chapter 120 restricted the use of declaratory judgments when dealing with administrative procedures. In School Board of Leon County v. Mitchell, 346 So.2d 562 (Fla. 1st DCA 1977), cert. den., Mitchell v. School Board of Leon County, 358 So.2d 132 (Fla. 1978), this court stated that resort to declaratory judgment was to be restricted to extraordinary cases. In Criterion Insurance Company v. State Department of Insurance, 458 So.2d 22 (Fla. 1st DCA), pet. for rev. dismissed, 461 So.2d 114 (Fla. 1984), this court stated that the fact that an alternative judicial remedy is explicitly recognized by the Administrative Procedure Act does not mean the exhaustion requirement may be dispensed with, citing Willis and Mitchell.
The Department contends that St. Joe's "lack of jurisdiction claim" is nothing more than a disguised challenge to the facial constitutionality of an agency rule (the Gulf County CCCL), while its claim of a due process violation and an improper study to determine the CCCL are allegations of a "deficiency in the administrative process" or an unconstitutional application of a statute or agency rule.
In Key Haven v. Board of Trustees of the Internal Improvement Trust Fund, 427 So.2d 153 (Fla. 1982), the court ruled that while the circuit court may, under appropriate circumstances, entertain a challenge to the facial validity of a statute being implemented by the agency (when the administrative proceedings can have no effect on the constitutional issue presented), there are two types of constitutional challenges to agency action which should not be entertained by a circuit court: an action alleging the facial constitutionality of an agency rule (because an adequate remedy remains available in the administrative process) and a request that the court declare an agency's action improper because of a constitutional deficiency in the administrative process (because "administrative remedies must be exhausted to assure that the responsible agency has had a full opportunity to reach a sensitive, mature, and considered decision upon a complete record appropriate to the issue"). Id. at 158. The court reaffirmed that as a matter of judicial policy, circuit courts should refrain from entertaining declaratory suits "except in the most extraordinary cases, where the party seeking to bypass usual administrative channels can demonstrate that no adequate remedy remains available under Chapter 120." Id. at 157.