605 So.2d 149 (1992)
FLORIDA POWER CORPORATION, INC., Appellant,
v.
STATE of Florida, DEPARTMENT OF ENVIRONMENTAL REGULATION, Appellee.
No. 91-2582.
District Court of Appeal of Florida, First District.
September 8, 1992.
*150 Frank E. Matthews and Michael P. Petrovich, of Hopping Boyd Green & Sams, Tallahassee, for appellant.
Douglas H. MacLaughlin, Asst. Gen. Counsel, Tallahassee, for appellee.
PER CURIAM.
We affirm the circuit court's dismissal of a complaint for declaratory judgment and injunctive relief and petition for writ of mandamus. The circuit court correctly ruled that Florida Power Corporation (FPC) had failed to exhaust its administrative remedies.
FPC owns an easement over property in Osceola County on which it seeks to install an electrical transmission line. The transmission line corridor and alignment covers approximately fourteen miles. Because the alignment encroaches upon areas characterized by the Department of Environmental Regulation (DER) as waters of the state for purposes of wetland resource permitting *151 in three locations, FPC filed an application in December of 1989 with DER for a dredge and fill permit for impacts to .0135 acres of jurisdictional wetlands, necessary to place approximately 353.1 cubic yards of "fill" in three locations to support certain transmission poles. In the summer of 1990, FPC undertook land clearing activities within the transmission line corridor where transmission pole replacements and new installation would occur.
Subsequent to FPC's land clearing activities, DER denied the request for a permit, asserting that the proposed installation activities would actually impact approximately 6.01 acres. DER found that the wetlands area would be impacted by minor trimming of branches within the mature forested canopy and removal of small sub-canopy trees beneath the existing corridor. DER also found that the proposed alignment would continue to result in disturbances to hydric soils and vegetation as a result of the tree cutting and maintenance activities and would result in a permanent change in the character of the wetland from a mature mixed forested canopy to a herbaceous wetland. DER concluded that this permanent change is expected to diminish the overall productivity of the system and adversely affect wildlife utilization. In March of 1991, FPC filed a request for a formal administrative hearing in response to DER's proposed agency action.
In June of 1991, FPC filed a complaint for declaratory judgment and injunctive relief together with a petition for writ of mandamus in the Leon County Circuit Court. In the complaint, FPC alleged that it would allow all trimmed vegetation to resume normal uninterrupted growth after the transmission line was in service, except for limiting vegetation height to fourteen feet directly below the 69 kV lines. It was asserted that this maintenance activity would be necessary to provide adequate clearance between vegetation and the transmission line in order to prevent possible fires and to ensure safe working conditions for FPC's maintenance staff. FPC contended that virtually no adverse environmental consequences would result from the work other than temporary displacement during actual pole installation, and the need to trim and maintain surface vegetation in the vicinity of the pole and transmission line. FPC contended that of the 6.01 acres of alleged total impacts, approximately 5.997 acres are alleged by DER to be "secondary impacts" of the clearing already undertaken and that DER was attempting to expand its permitting jurisdiction beyond its statutory mandate because its clearing activity is not subject to DER's permitting jurisdiction.
DER filed a motion to dismiss the complaint. DER noted that no final agency action had been taken with regard to the 120.57 formal hearing FPC had requested and argued that FPC had failed to exhaust its administrative remedies. After a hearing, the circuit court dismissed the complaint with prejudice based on FPC's failure to properly exhaust its administrative remedies. FPC then filed the instant appeal.
FPC argues that the circuit court erroneously dismissed its complaint because it properly alleged lack of agency jurisdiction, which is a recognized exception to the doctrines of primary jurisdiction and exhaustion of administrative remedies. FPC contends DER has neither authority over the vegetative clearing activities nor authority to consider the "secondary impacts" of the vegetative clearing activities, in determining the impact of the proposed dredging and filling for purposes of placement of the transmission poles, because these activities are not within the legislative definition of either "dredging" or "filling."[1]
This Court has on numerous occasions set forth the following test for determining whether an administrative forum may be bypassed once an issue has been raised challenging an agency's jurisdiction to take certain action:

*152 When an agency acts without colorable statutory authority that is clearly in excess of its delegated powers, a party is not required to exhaust administrative remedies before seeking judicial relief. A finding of lack of colorable statutory authority provides the necessary limitation on this exception to the requirement of exhaustion of administrative remedies. A jurisdictional claim which has apparent merit, or one which depends upon factual determination in most instances requires exhaustion of administrative remedies before resort to judicial forum.
Department of Envtl. Regulation v. Falls Chase Special Taxing Dist., 424 So.2d 787, 796-97 (Fla. 1st DCA 1982), review denied, 436 So.2d 98 (Fla. 1983). See also, e.g., St. Joe Paper Co. v. Department of Natural Resources, 536 So.2d 1119 (Fla. 1st DCA 1988); Department of Professional Regulation v. Marrero, 536 So.2d 1094 (Fla. 1st DCA 1988), review denied, 545 So.2d 1360 (Fla. 1989).
This Court has previously recognized that DER may consider the "secondary impacts" which will result from a project if a permit necessary for implementation of the project is granted. See, e.g., The Conservancy, Inc. v. A. Vernon Allen Builder, Inc., 580 So.2d 772 (Fla. 1st DCA) (DER may consider impacts of contemplated development of estate homes on coastal barrier island in reviewing permit application for installation of sewage pipeline system where contemplated development of 75 estate homes was not speculative and was closely linked or causally related to the proposed dredging and filling; such evidence would be highly relevant to the consideration of whether the applicant has carried its burden of giving reasonable assurances under section 403.918 that water quality standards will not be violated and the project is not contrary to the public interest), review denied, 591 So.2d 631 (Fla. 1991); del Campo v. Department of Envtl. Regulation, 452 So.2d 1004 (Fla. 1st DCA 1984) (hearing officer erroneously excluded evidence of the possible environmental impact on the island of a proposed residential development during hearing regarding dredge and fill permit for construction of a bridge to the island).
We cannot say that DER's claim of jurisdiction is "without colorable statutory authority," or that it has acted "clearly in excess of its delegated powers," so as to justify an exception to the judicially created doctrine of exhaustion of administrative remedies. Section 403.918, Florida Statutes (1989), provides in part:
(2) A permit may not be issued under ss. 403.91-403.929 unless the applicant provides the department with reasonable assurance that the project is not contrary to the public interest....
(a) In determining whether a project is not contrary to the public interest, or is clearly in the public interest, the department shall consider and balance the following criteria:
1. Whether the project will adversely affect the public health, safety, or welfare or the property of others;
2. Whether the project will adversely affect the conservation of fish and wildlife, including endangered or threatened species, or their habitats;
3. Whether the project will adversely affect navigation or the flow of water or cause harmful erosion or shoaling;
4. Whether the project will adversely affect the fishing or recreational values or marine productivity in the vicinity of the project;
5. Whether the project will be of a temporary or permanent nature;
6. Whether the project will adversely affect or will enhance significant historical and archaeological resources under the provisions of s. 267.061; and
7. The current condition and relative value of functions being performed by areas affected by the proposed activity.
(Emphasis added).
DER may consider the impact of the continuous maintenance activity that will take place in order to restrict surface vegetation in the fourteen mile transmission line corridor. This anticipated maintenance activity is causally related to the proposed dredging and filling necessary for installation of the transmission poles. Evidence of the effects of the maintenance activity is relevant in determining whether *153 FPC has provided reasonable assurance that the project is not contrary to the public interest pursuant to section 403.918.
FPC has not demonstrated that it cannot obtain adequate relief from the administrative remedies available to it. The circuit court's dismissal of the complaint based upon FPC's failure to exhaust its administrative remedies is therefore affirmed.[2]
We also reject FPC's argument that the circuit court erred in not granting its request for a writ of mandamus requiring DER to specify the reasons for permit denial as required. Section 403.92, Florida Statutes (1989), provides:
In the event that the department issues a notice of intent to deny a permit or denies a permit required pursuant to ss. 403.91-403.929, such notice or denial shall contain an explanation by the department of the reasons for denial and an explanation, in general terms, of what changes, if any, in the permit application are necessary in order for the department to approve the proposed project.
The notice of denial in the present case adequately sets forth reasons for denial and suggested changes in the application if the applicant desired to resubmit.
AFFIRMED.
BARFIELD, ALLEN and KAHN, JJ., concur.
NOTES
[1] "Dredging" is defined as "excavation, by any means, in waters." "Filling" means "the deposition, by any means, of materials in waters." Section 403.911(2) and (4), Florida Statutes (1989).
[2] FPC's argument that the circuit court prematurely dismissed the complaint for declaratory judgment before allowing a presentation of the facts is without merit.