783 So.2d 1029 (2001)
FLO-SUN, INC., et al., Petitioners,
v.
Claude R. KIRK, et al., Respondents.
Sugar Cane Growers Cooperative of Florida, Petitioner,
v.
Claude R. Kirk, et al., Respondents.
Nos. SC95044, SC95045.
Supreme Court of Florida.
March 29, 2001.
*1031 Joseph P. Klock, Jr., and Edward M. Mullins of Steel, Hector & Davis, LLP, Miami, FL, and Gary S. Gibson, West Palm Beach, FL, on behalf of Flo-Sun, Inc. and Okeelanta, Corporation; and Gary P. Sams, Robert P. Smith, and Gabriel E. Nieto of Hopping, Green, Sams & Smith, P.A., Tallahassee, FL, Margaret L. Cooper of Jones, Foster, Johnson & Stubbs, P.A., West Palm Beach, FL, and Jane Kreusler-Walsh, P.A., Palm Beach, FL, on behalf of Sugar Cane Growers Cooperative of Florida, for Petitioners.
Jack Scarola of Searcy, Denney, Scarola, Barnhart & Shipley, P.A., West Palm Beach, FL, and Russell S. Bohn of Caruso, Burlington, Bohn & Compiani, P.A., West Palm Beach, FL, for Respondents.
James T. Hendrick, County Attorney, Key West, FL, for Monroe County, FL, Amicus Curiae.
LEWIS, J.
We have for review Kirk v. United States Sugar Corp., 726 So.2d 822 (Fla. 4th DCA 1999), based on express and direct conflict with State v. SCM Glidco Organics Corp., 592 So.2d 710 (Fla. 1st DCA 1991); Communities Financial Corp. v. Florida Department of Environmental Regulation, 416 So.2d 813 (Fla. 1st DCA 1982); Gulf Pines Memorial Park, Inc. v. Oaklawn Memorial Park, Inc., 361 So.2d 695 (Fla. 1978) and State ex rel. Dep't of General Services v. Willis, 344 So.2d 580 (Fla. 1st *1032 DCA 1977). We have jurisdiction. See art. V, § 3(b)(3), Fla. Const. For the reasons set forth below, we approve the district court's decision to the extent that it holds that chapter 403 of the Florida Statutes did not impliedly repeal chapter 823 of the Florida Statutes. Further, we quash the remainder of the district court's decision to the extent that it conflicts with our holding today that even though a public nuisance cause of action is still available, the doctrine of primary jurisdiction counsels in favor of having an administrative agency with the experience and expertise to deal with the complex issues presented in this case address Respondents' grievances.

FACTS
Former Governor Claude Kirk, individually and on behalf of the State of Florida, along with various residents of Palm Beach County (collectively "Respondents"), filed the present action against United States Sugar Corporation, Sugar Cane Growers Cooperative of Florida, Flo-Sun, Incorporated, Okeelanta Corporation, A Duda & Sons Incorporated, and QO Chemicals (collectively "Petitioners").[1] The amended complaint alleged that Petitioners, with the exception of QO Chemicals, have maintained a public nuisance by engaging in the cultivation, harvesting and processing of sugar cane in a manner that annoys the community and injures the health of the community at large and Respondents individually. As to QO Chemicals, the complaint alleged that the company disposes of furfural, a chemical by-product derived from sugar cane processing, by deep-well injection without a Florida Department of Environmental Protection ("DEP") permit. The complaint alleged that Petitioners' activities damage the use and enjoyment of Respondents' property; cause personal discomfort, inconvenience, and annoyance; devastate the air, land and water quality; pollute the public lands; injure wildlife; and cause bodily injury to Respondents' physical health and well-being. The complaint further alleged that due to the "government's complicity in the offensive conduct," only the judicial branch has the will, authority, power and independence to abate the nuisance. More specifically, Respondents alleged that:
Government from the local municipal level to the Federal level has aided and abetted in the creation and maintenance of the nuisance complained of by failing to enforce existing laws prohibiting and regulating [Petitioners'] offensive conduct and by providing direct and indirect economic subsidies to support [Petitioners'] offensive conduct....
Amended Complaint at 5. Respondents sought injunctive relief to terminate Petitioners' agricultural and related operations, as well as compensatory damages and costs.
Petitioners filed a motion to dismiss based in part upon the doctrine of primary jurisdiction and the Respondents' failure to employ available administrative remedies. After a hearing, the trial court dismissed the amended complaint with prejudice. In a twelve-page order, the trial court reasoned:
If [Respondents] were granted the relief prayed for in their Amended Complaint, the result would be to have this Court substitute its judgement for that of the Florida Legislature, the Florida Department of Environmental Protection, the Florida Department of Agriculture and Consumer Services, and other state and federal agencies as it relates *1033 to the environmental laws, rules, regulations and standards under which [Petitioners'] activities are controlled and regulated. This would require the Court to make decisions and set standards with regard to numerous areas of environmental regulation, responsibility for which has been delegated to various state and federal regulatory agencies, and would further require this Court to develop the resources and special expertise which these agencies possess to control air and water pollution and to protect the environment and the public health of South Florida. The simple fact is that the judicial branch is neither possessed of the technical expertise nor would it be appropriate for it to entertain jurisdiction over a public nuisance complaint such as the one pleaded by [Respondents] here. To do so would create a substantial risk of inconsistent requirements among the separate branches of state and federal government and would allow claims to be advanced which are not cognizable in this Court under controlling case law.
Order Granting Motion to Dismiss at 8.
The trial court further noted that chapter 823 was impliedly superseded by part I of chapter 403, at least as the former relates to air and water pollution; accordingly, because Respondents' claims were based on violations of section 823.05, Florida Statutes (1995), and because the claims were related to the alleged pollution of the air and water, the trial court concluded that Respondents' public nuisance claim warranted dismissal on this basis as well. Finally, the trial court determined, without much explanation, that the amended complaint must be dismissed because Respondents lacked standing.[2] Respondents appealed.
On appeal, the Fourth District reversed. Specifically, the district court wrote:
[Respondents] are alleging that agency errors have been so egregious or devastating that administrative remedies would be insufficient; that the governmental agencies entrusted with preventing the sort of pollutants and harm allegedly caused by [Petitioners] are not doing their job and that [Petitioners] are operating in a manner contrary to existing statutes and regulations. Taking these allegations as true, as a court must do on a motion to dismiss, the trial court erred in determining that the doctrine of primary jurisdiction applies to bar [Respondents'] public nuisance suit at this juncture.
Kirk, 726 So.2d at 825. The district court added:
If [Petitioners] can later disprove [Respondents'] allegations through record evidence, then the doctrine of primary jurisdiction might serve as a basis for disposing of this case.
Id.
Additionally, relying primarily on the "cumulative remedies" clause in section 403.191, Florida Statutes (1995), the Fourth District disagreed with the trial court and held that that chapter 403 had not impliedly superseded chapter 823. Finally, the district court concluded that Respondents did have standing to initiate this action. Petitioners sought this Court's review.[3]

*1034 ANALYSIS

1. Background
The Florida Legislature has devised a detailed and exhaustive regulatory system to address issues which arise in connection with the preservation and protection of the environment. See chapters 373 (Water Resources; encompassing the "Everglades Forever Act"); 376 (Pollutant Discharge Prevention and Removal); 403 (Environmental Control); 487 (Pesticides); and 590 (Forest Protection), Florida Statutes. Relatedly, the Legislature has empowered several administrative agenciesrelevant to our purposes are the Florida Department of Environmental Protection ("DEP"), the South Florida Water Management District ("SFWMD"), and the Florida Department of Agriculture and Consumer Services, Division of Forestry ("DACS")to promulgate and enforce regulations for the protection of the environment. See Fla. Admin. Code Titles 62(DEP); 40-E (SFWMD); and 5I-2 (DACS).
The decisions of these administrative agencies are subject to review pursuant to the Administrative Procedure Act ("APA"), codified in chapter 120 of the Florida Statutes. Under the APA, any person whose substantial interests are affected by agency action may petition the pertinent agency for a formal hearing, conducted by an independent administrative law judge from the Division of Administrative Hearings. See § 120.569, Fla. Stat. (1995). Moreover, any person with a substantial interest in any agency rule may petition that agency to adopt, amend or repeal a rule. See § 120.54(7), Fla. Stat. (1995). Finally, under the APA, an agency's final action is also subject to judicial review in the district courts of appeal. See § 120.68, Fla. Stat. (1995).

2. Merits
To reiterate, the trial court dismissed Respondents' amended complaint based on its conclusion that (1) chapter 403 impliedly superseded chapter 823 as the latter relates to air and water pollution; and (2) the doctrine of primary jurisdiction mandated dismissal. The district court reversed, determining that (1) chapter 403 did not impliedly supersede chapter 823; and (2) the doctrine of primary jurisdiction did not bar Respondents' public nuisance complaint because Respondents alleged that prior administrative agency errors had been egregious or devastating.

A. Relationship of Chapter 403 to Chapter 823
Part I of chapter 403 of the Florida Statutes, also referred to as the "Florida Air and Water Pollution Control Act," ( hereinafter "Act"), is undoubtedly comprehensive legislation relating to the protection of Florida's air and waters from contamination. The Act deposits the power and duty to control and prohibit air and water pollution with the DEP. See § 403.061, Fla. Stat. (1995). It also includes the following provision:
403.191 Construction in relation to other law.
(1) It is the purpose of this act to provide additional and cumulative remedies to prevent, abate, and control the pollution of the air and waters of the state. Nothing contained herein shall be construed to abridge or alter rights of action or remedies in equity under the common law or statutory law, criminal or civil, nor shall any provisions of this act, or any act done by virtue thereof, be construed as estopping the state or any municipality, or person affected by air or water pollution, in the exercise of their rights in equity or under the common law or statutory law to suppress nuisances or to abate pollution.
(Emphasis supplied.)
Despite this apparently clear legislative declaration that the remedies provided by *1035 the Act are cumulative in nature, the trial court in this case dismissed Respondents' public nuisance cause of action in rendering the determination that chapter 403 has impliedly superseded chapter 823, at least as the latter relates to the abatement of air or water pollution. In support, the trial court relied on the First District's decision in State v. SCM Glidco Organics Corp., 592 So.2d 710 (Fla. 1st DCA 1991). In SCM Glidco, the district court considered the dismissal of two criminal prosecutions for violations of section 823.01, Florida Statutes (1991), which creates a second-degree misdemeanor for maintaining a public nuisance. In upholding the dismissal, the district court held that chapter 403 superseded section 823.01 insofar as any application of the latter section to air pollution is concerned. See SCM Glidco, 592 So.2d at 712. Specifically, in a very short two-sentence analysis, the majority in SCM Glidco reasoned that chapter 403 was intended to cover the entire subject area of air pollution, and that as a result, it replaced the earlier, nonspecific legislation codified as section 823.01. See id.
Judge Ervin, in a lengthy, well-reasoned dissent, criticized the majority's determination, reasoning that the conduct criminalized in section 823.01 was different and more encompassing than that proscribed by chapter 403. See id. at 716. Judge Ervin noted that to establish a violation under chapter 403, the State was required to offer proof of harm or injury, see § 403.161, Fla. Stat. (1995); whereas under section 823.01, the State need only show community annoyance. See id. Judge Ervin discussed well-established principles of statutory analysis and construction and further noted the far different elements of proof involved with section 403.161 than those applicable under section 823.01. See id.
The Second District, in State v. General Development Corp., 448 So.2d 1074 (Fla. 2d DCA 1984), reached a result contrary to that of the majority in SCM Glidco. General Development involved a civil action initiated by a state attorney seeking enforcement of provisions contained within chapter 403. The trial court entered a final order dismissing the action based upon lack of standing because the state attorney had independently initiated the action (i.e., not at the direction of the governor, attorney general, or the Department of Environmental Regulation). Although it determined that the state attorney had no independent authority to initiate an independent civil action under or pursuant to chapter 403, it nevertheless noted that the state attorney had the authority to initiate an action to abate or enjoin a public nuisance. Specifically, the court relied on the "cumulative remedies" provision in section 403.191 in support of its reasoning that "a public nuisance cause of action seems to be one of the `rights of action or remedies in equity under the common law or statutory law' which is not abridged or altered by chapter 403 and is cumulative to the remedies provided in that chapter." General Development, 448 So.2d at 1080 (citing State ex rel. Shevin v. Tampa Elec. Co., 291 So.2d 45, 48 n. 8 (Fla. 2d DCA 1974)).
Chapter 403, on its face, does not appear to repeal any provisions of chapter 823. As such, for us to determine that chapter 403 supersedes chapter 823, we would be required to conclude that chapter 403 does so impliedly. To that end, the general rule applicable here is that implied repeals are not favored and will not be upheld in doubtful cases. See State v. Digman, 294 So.2d 325 (Fla.1974). Moreover, before making a determination that a subsequent statute has impliedly repealed one previously enacted, there should appear either a positive repugnancy between the two statutes or a clear legislative intent that the later act prescribes the only *1036 governing rule. See Atkinson v. State, 156 Fla. 449, 23 So.2d 524 (1945).
With those standards in mind, we consider whether there is sufficient basis to determine that chapter 403 was impliedly intended to eliminate a public nuisance cause of action authorized under chapter 823, at least when the action relates to the pollution of the air or water. In this case, the district court below determined that chapter 403 did not impliedly supersede the provisions of chapter 823; therefore, according to the district court, a cause of action for public nuisance relating to air and water pollution still remains a viable option. We agree.
First, the language of section 403.191, the cumulative remedies/savings clause, could not be more clear. The remedies included within chapter 403 are intended to be "additional and cumulative" to the remedies currently available (i.e., public nuisance suit under chapter 823). It would be less than intellectually credible to conclude that section 403.191 does not mean what its words plainly express. See Capers v. State, 678 So.2d 330, 332 (Fla. 1996) ("[T]he plain meaning of statutory language is the first consideration of statutory construction."); St. Petersburg Bank & Trust Co. v. Hamm, 414 So.2d 1071, 1073 (Fla.1982) (same). Second, a public nuisance may be classified as something that causes "any annoyance to the community or harm to public health." Kirk, 726 So.2d at 826 (emphasis added); see § 823.01, Fla. Stat. (1995). As a result, something may legally constitute a public nuisance under chapter 823 although it may technically comply with existing pollution laws codified in chapter 403. Finally, and of critical importance, the enactment of Florida's Right to Farm Act, section 823.14, Florida Statutes (1995) (hereinafter "Farm Act"), provides a solid basis for the conclusion that chapter 403 was not intended to supersede chapter 823. Specifically, the Farm Actadopted over ten years after the 1967 enactment of chapter 403provides a defense to a public nuisance action in connection with agricultural operations which were "not a nuisance at the time of its established date of operation... if the farm operation conforms to generally accepted agricultural and management practices." § 823.14(4)(a), Fla. Stat. (1995). The Farm Act specifically states that "[i]t is the purpose of this act to protect reasonable agricultural activities conducted on farm land from nuisance suits." § 823.14(2), Fla. Stat. (1995). Clearly, then, in adopting a statutory defense, the Legislature anticipated that agricultural activities would still be subject to public nuisance actions even after the enactment of chapter 403. For these reasons, and because the standard that implied repeals are disfavored and should only be found in cases where there is a "positive repugnancy" between the two statutes or "clear legislative intent" indicating that the Legislature intended the repeal, neither of which is present in this case, we approve the Fourth District's holding that chapter 403 did not impliedly repeal the public nuisance provisions in chapter 823 as they relate to the pollution of Florida's air and waters.

B. Doctrine of Primary Jurisdiction
However, having so concluded, it is now necessary to determine whether the doctrine of primary agency jurisdiction counsels in favor of submitting Respondents' grievances through the appropriate administrative processes.[4] The doctrine of *1037 primary jurisdiction dictates that when a party seeks to invoke the original jurisdiction of a trial court by asserting an issue which is beyond the ordinary experience of judges and juries, but within an administrative agency's special competence, the court should refrain from exercising its jurisdiction over that issue until such time as the issue has been ruled upon by the agency.[5]See State ex rel. Dep't of Gen. Servs. v. Willis, 344 So.2d 580, 589 (Fla. 1st DCA 1977); see also Hill Top Developers v. Holiday Pines Serv. Corp., 478 So.2d 368, 370 (Fla. 2d DCA 1985); South Lake Worth Inlet Dist. v. Town of Ocean Ridge, 633 So.2d 79, 87-88 (Fla. 4th DCA 1994). The doctrine of primary jurisdiction enables a court to have the benefit of an agency's experience and expertise in matters with which the court is not as familiar, protects the integrity of the regulatory scheme administered by the agency, and promotes consistency and uniformity in areas of public policy. See Key Haven Associated Enters. v. Bd. of Trustees of the Internal Improvement Trust Fund, 427 So.2d 153, 157 (Fla.1982); Hill Top Developers, 478 So.2d at 370. Pursuant to the doctrine, "[j]udicial intervention in the decision-making function of the executive branch must be restrained in order to support the integrity of the administrative process and to allow the executive branch to carry out its responsibilities as a coequal branch of government." Key Haven Associated Enters., 427 So.2d at 157; see also Gulf Pines Mem'l Park, Inc. v. Oaklawn Mem'l Park, Inc., 361 So.2d 695, 698-99 (Fla.1978) ("[I]f administrative agencies are to function and endure as viable institutions, courts must refrain from `promiscuous intervention' in agency affairs `except for most urgent reasons.'"); Bal Harbour Village v. City of North Miami, 678 So.2d 356, 364 (Fla. 3d DCA 1996); Willis, 344 So.2d at 589. It is also important to note that the application of the doctrine of primary jurisdiction is a matter *1038 of deference, policy and comity, not subject matter jurisdiction. See Gulf Pines Mem'l Park, 361 So.2d at 699; St. Joe Paper Co. v. Florida Dep't of Natural Resources, 536 So.2d 1119, 1122 (Fla. 1st DCA 1988); Town of Ocean Ridge, 633 So.2d at 87.
Respondents' arguments with regard to primary jurisdiction are two-fold. First, they assert that the doctrine does not apply because past agency errors have been so egregious and devastating that resort to administrative remedies would be, essentially, futile. Alternatively, Respondents contend that even if the doctrine of primary jurisdiction is applicable, the trial court erred in dismissing the action with prejudice because the proper outcome would have been to suspend the court's jurisdiction until the appropriate administrative agency addressed the issues.
As to Respondents' first position, Florida courts have consistently held that parties need not resort to administrative remedies where agency errors are so "egregious or devastating that the promised administrative remedy is too little or too late." Communities Fin. Corp. v. Florida Dep't of Envtl. Regulation, 416 So.2d 813, 816 (Fla. 1st DCA 1982); see also Willis, 344 So.2d at 590.[6] Specifically, courts have set forth the following criteria which, if satisfied, would invoke the jurisdiction of trial courts in such cases:
(1) the complaint must demonstrate some compelling reason why the APA (Chapter 120, Florida Statutes) does not avail the complainants in their grievance against the agency; or (2) the complaint must allege a lack of general authority in the agency and, if it is shown, that the APA has no remedy for it; or (3) illegal conduct by the agency must be shown and, if that is the case, that the APA cannot remedy that illegality; or (4) agency ignorance of the law, the facts, or public good must be shown and, if any of that is the case, that the Act provides no remedy; or (5) a claim must be made that the agency ignores or refuses to recognize related or substantial interests and refuses to afford a hearing or otherwise refuses to recognize that the complainants' grievance is cognizable administratively.
Communities Fin. Corp., 416 So.2d at 816; see also Willis, 344 So.2d at 591.
As noted earlier, Respondents in this case have relied on the "egregious or devastating agency errors" exception to the doctrine of primary jurisdiction. In support, they alleged in their Amended Complaint:
[Former Governor Kirk] is compelled to bring this action to continue his efforts as a private citizen acting in the name of the State as a consequence of the government's complicity in the offensive conduct of the [Petitioners].
Government from the local municipal level to the Federal level has aided and abetted in the creation and maintenance of the nuisance complained of by failing to enforce existing laws prohibiting and regulating [Petitioners'] offensive conduct and by providing direct and indirect economic subsidies to support the [Petitioners'] offensive conduct without which subsidies and price supports the [Petitioners'] agricultural and processing activities would cease as economically productive.
With the assistance and encouragement of the legislature and executive branches of government, the [Petitioners'] offensive conduct has generated huge profits for the [Petitioners] which they have used in part to preserve their *1039 special interests at the expense of the public good through the making of enormous political contributions. The judicial branch alone has the will, the authority, the power, and the independence to abate this ongoing nuisance.
Respondents' Amended Complaint at 5-6.
The decision below emphasized that due to the procedural posture of the casea review of an order entered on a motion to dismissRespondents' allegations must be accepted as true; and as such, it was improper for the circuit court to dismiss based on primary jurisdiction because Respondents' had seemingly alleged that agency errors were egregious and devastating. See Kirk, 726 So.2d at 825. While the district court was certainly correct that in reviewing an order entered on a motion to dismiss the allegations in the complaint must be taken as true, see Londono v. Turkey Creek, Inc., 609 So.2d 14, 19 n. 4 (Fla.1992), the allegations in the complaint, even if true, do not satisfy the requirements which would trigger the application of the exception.
Noticeably, the criteria outlined as a condition precedent to the application of the "egregious or devastating agency errors" exception to the doctrine of primary jurisdiction requires some allegation that the APA provides no remedy. No such allegation was made by Respondents. In fact, Respondents' allegations may be appropriately characterized as little more than general and vague allusions relating to a governmental conspiracy propelled by campaign contributions. In short, the allegations in the amended complaint do not sufficiently set forth ultimate facts that agency errors are egregious or devastating and that the APA provides no recourse.
Incidentally, allegations that political contributions equate to political corruption are insufficient. See Austin v. Michigan State Chamber of Commerce, 494 U.S. 652, 657, 110 S.Ct. 1391, 108 L.Ed.2d 652 (1990) ("[T]he use of funds to support a political candidate is `speech'; independent campaign expenditures constitute `political expression "at the core of our electoral process and of the First Amendment freedoms."'"); State v. Dodd, 561 So.2d 263 (Fla.1990) (noting that political contribution is a constitutional right and an entirely legal activity). Moreover, Respondents' allegations of widespread corruption are conclusory and lacking in the precision necessary for even "notice pleading." Accepting these generalized allegations facially as sufficient would require an extension of logic to the extreme that, not only are the administrative agencies and independent administrative law judges corrupt, but also that district court judgeswho are in the position to review the decisions of the agencies and administrative judgesare also somehow part of this conspiracy. In addition, while states do have primary responsibilities for environmental regulations, state action is subject to oversight by the Federal Environmental Protection Agency. Again, if accepted as facially sufficient, the allegation of a covert conspiracy would require application of logic that the Federal Government is also "aiding and abetting" the alleged nuisance.
Again addressing primary jurisdiction, the simple fact that the doctrine of primary agency jurisdiction may apply does not necessarily mean that it must be applied. As noted earlier, this is a doctrine grounded on the notion of judicial deference and restraint. See, e.g., Hill Top Developers, 478 So.2d at 370 ("In the circumstance where the primary jurisdiction doctrine is applicable, the judiciary, although possessing subject matter jurisdiction to pass upon the asserted claim, stays its hand and defers to the administrative agency in order to maintain uniformity at that level or to bring specialized *1040 expertise to bear upon the disputed issues."). In this case it is abundantly apparent that the comprehensive legislative scheme established to deal with environmental concerns is aptly suited to address the complex technical issues which may arise in this case. Specifically, the scheme now in force extensively controls pollutant discharge, requires comprehensive permitting, establishes air and water quality standards, and sets forth a detailed plan for the restoration of the Everglades through the Everglades Forever Act and the Everglades Construction Project. This legislative scheme is implemented by numerous volumes of regulations containing extensively detailed, scientific criteria and is enforced by agencies having the required experience and expertise, such as the DEP. These are not simple, routine matters which may be easily understood by trial judges and juries.
It is necessary to note that the district court did not hold that primary jurisdiction was not applicable. Rather, the Fourth District noted that "[i]f [Petitioners'] can later disprove [Respondents'] allegations through record evidence, then the doctrine of primary jurisdiction might serve as a basis for disposing of this case." Kirk, 726 So.2d at 825. This determination, however, is contrary to the general rule that the burden is on "the party seeking to bypass usual administrative channels [to] demonstrate that no adequate remedy remains available under chapter 120." Gulf Pines Mem'l Park, 361 So.2d at 699; see also Communities Fin. Corp., 416 So.2d at 816 (noting that complainant must demonstrate some compelling reason why the APA does not avail them in their grievance); Willis, 344 So.2d at 591(same).
We note that in reaching our conclusion today that the doctrine of primary jurisdiction counsels in favor of having an administrative agency address the allegations presented by Respondents in this case, we have given thorough consideration to the reasoning presented in State ex rel. Shevin v. Tampa Electric Co., 291 So.2d 45 (Fla. 2d DCA 1974). In that case, the attorney general filed a public nuisance action seeking to enjoin the electric company from allegedly discharging noxious and deleterious chemicals into the air. The circuit court granted a motion to dismiss on the basis of primary jurisdiction. On appeal, the Second District held that the doctrine of primary jurisdiction was not applicable since the resolution of a public nuisance action was a judicial matter, reasoning that public nuisance actions do not necessarily turn on technical questions. See Shevin, 291 So.2d at 47.
It is critical to mention, however, that Shevin was decided prior to the enactment of the modern APA which:
[S]ubjects every agency action to immediate or potential scrutiny; which assures notice and opportunity to be heard on virtually every important question before an agency; which provides independent hearing officers as fact finders in the formulation of particularly sensitive administrative decisions; which requires written findings and conclusions on impact issues; which assures prompt administrative action; and which provides judicial review of final, even of interlocutory, orders affecting a party's interest.
Willis, 344 So.2d at 590. Indeed, "[t]he Act's impressive arsenal of varied and abundant remedies for administrative error requires judicial freshening of the doctrines of primary jurisdiction and exhaustion of remedies, and greater judicial deference to the legislative scheme." Id. Moreover, while the APA indicates that nothing in it "shall be construed to repeal any provision of the Florida Statutes which grants the right to a proceeding in the circuit court in lieu of an administrative *1041 hearing," see section 120.73, Florida Statutes (1995), Florida courts have noted that the doctrine of primary jurisdiction is one of "self-limitation" which has "evolved in marking out the boundary lines between areas of administrative and judicial action." Florida Soc'y of Newspaper Editors v. Florida Pub. Serv. Comm'n, 543 So.2d 1262, 1266 (Fla. 1st DCA 1989) (quoting Willis, 344 So.2d at 589). That is, the doctrine of primary jurisdiction does not serve to divest the circuit court of jurisdiction; it merely counsels that when issues arise which have been placed within the special competence of an administrative body, the court should practice judicial restraint.
Finally, Respondents also argue that, even assuming the doctrine of primary jurisdiction to be applicable, the trial court erred in dismissing the amended complaint with prejudice. Respondents are correct in this assertion. The doctrine of primary agency jurisdiction operates "to postpone judicial consideration of a case to administrative determination of important questions involved by an agency with special competence in the area. It does not defeat the court's jurisdiction over the case, but coordinates the work of the court and the agency by permitting the agency to rule first and giving the court the benefit of the agency's views...." Hill Top Developers v. Holiday Pines Serv. Corp., 478 So.2d 368, 370 (Fla. 2d DCA 1985) (quoting Mercury Motor Express, Inc. v. Brinke, 475 F.2d 1086, 1091-92 (5th Cir. 1973) (emphasis added).) Thus, where the doctrine is applicable, the court is to suspend consideration of the issues until these have been presented to the appropriate administrative agency. See, e.g., Hill Top Developers, 478 So.2d at 370 (finding that application of primary jurisdiction "simply would have required the trial court to abate the proceeding until such time as an order was issued by the [Public Service Commission], pursuant to its powers."). Similarly, in Bal Harbour Village, the Third District has agreed with Respondents' contention on this issue. After finding that the doctrine of primary jurisdiction was applicable, the district court in Bal Harbour Village noted that "[t]he dismissal is, of course, without prejudice to Bal Harbour to pursue its environmental objections with the [DEP]." 678 So.2d at 364. In this case, however, the trial court dismissed Respondents' complaint with prejudice. This determination is contrary to the general rule cited above that primary jurisdiction simply requires that the court postpone or suspend judicial determination of the issues. It certainly does not support, nor does it mandate, dismissal with prejudice.

CONCLUSION
Based on the foregoing, we approve the Fourth District's holding that chapter 403 did not impliedly repeal chapter 823. We further hold that even though a public nuisance cause of action is still available, the doctrine of primary jurisdiction counsels in favor of having an administrative agency with the experience and expertise to deal with the complex issues raised in this case address Respondents' grievances; thus, we quash the district court's decision to the extent that it is inconsistent with this opinion.
It is so ordered.
WELLS, C.J., and SHAW, HARDING, ANSTEAD, and QUINCE, JJ., concur. PARIENTE, J., recused.
NOTES
[1] Only Flo-Sun, Inc., Okeelanta Corp., and Sugar Cane Growers Cooperative of Florida are Petitioners in this Court.
[2] The trial court did note that although Respondents' claims under a public nuisance theory were barred, Respondents were not precluded from bringing an individual, private right of action for personal injury or property damage allegedly resulting from Petitioners' activities.
[3] Petitioners do not seek review of the district court's holding that Respondents have standing to bring forth this case. Moreover, an independent review of the district court's holding as to standing appears to indicate that the Fourth District's determination was correct.
[4] To be sure, although the cumulative remedies/savings clause codified as section 403.191, Florida Statutes (1995), evinces a legislative intent to retain non-administrative remedies in the environmental pollution arena, it does not preclude us from considering whether primary jurisdictiona doctrine based on judicial deferencemay advise in favor of submitting Respondents' claims for consideration to an appropriate administrative body. See, e.g., Bal Harbour Village v. City of North Miami, 678 So.2d 356, 364 (Fla. 3d DCA 1996)(applying primary jurisdiction based on chapter 403's regulatory scheme despite the existence of the cumulative remedy/savings clause (i.e., section 403.191)); South Lake Worth Inlet Dist. v. Town of Ocean Ridge, 633 So.2d 79, 90-91 (Fla. 4th DCA 1994) (applying primary jurisdiction based on chapter 161's regulatory scheme, despite the existence of a cumulative remedy/savings clause codified as section 161.201, Florida Statutes).
[5] It is necessary to mention that although usually considered companion doctrines, the doctrines of primary jurisdiction and exhaustion of remedies are not synonymous. In United States v. Western Pac. R.R. Co., 352 U.S. 59, 63, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956), the Court explained the distinction as follows:

The doctrine of primary jurisdiction, like the rule requiring exhaustion of administrative remedies, is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties. "Exhaustion" applies where a claim is cognizable in the first instance by an administrative agency alone; judicial interference is withheld until the administrative process runs its course. "Primary jurisdiction," on the other hand, applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its review.
Accordingly, the doctrine of exhaustion arises as a defense to judicial review of an administrative action and is based on the need to avoid premature interruption of the administrative process; whereas primary jurisdiction operates where a party seeks to invoke the original jurisdiction of a court to decide issues which may require resort to administrative expertise. See generally Louis L. Jaffe, Primary Jurisdiction, 77 Harv. L.Rev. 1037 (1964).
[6] This exception is applied both to the doctrine of primary jurisdiction and to the doctrine of exhaustion of remedies. See Willis, 344 So.2d at 590.