876 So.2d 36 (2004)
David H. KLIGFELD, Dhalco Financial Services, Inc., James A. Torchia and Empire Insurance, Inc., Appellants,
v.
STATE of Florida, OFFICE OF FINANCIAL REGULATION, Appellee.
Nos. 4D03-2880, 4D03-3298.
District Court of Appeal of Florida, Fourth District.
June 2, 2004.
Rehearing Denied July 13, 2004.
*37 Barry S. Mittelberg of Mittelberg & Nicosia, P.A., Ft. Lauderdale, for appellants.
Peter G. Fisher, Assistant General Counsel, Office of Financial Regulation, Tallahassee, for appellee.
HAZOURI, J.
David Kligfeld and James Torchia (appellants), were Florida-licensed life and health insurance agents. Appellants provided their clients with applications for viatical settlement contracts with American Benefits Corporation (ABS) in 1998 and 1999. During this time frame, appellants collected money from individuals for the purposes of purchasing viaticated life insurance policies, the benefits of which were to be assigned to a trust. By virtue of the contracts, the individuals were to receive a share of the trust income proportionate to the amount of money they had placed with ABS. Such agreements are generally called viatical settlement purchase agreements (VSPA's).
The ABS program was determined to be a fraudulent financial scheme, and its organizers have been criminally prosecuted and convicted. The Florida Department of Banking and Finance, which has been reorganized into the Office of Financial Regulation (OFR), filed administrative complaints against both appellants, alleging that they acted as unregistered securities dealers and offered and sold unregistered securities to Florida investors. As a result of the administrative complaints filed by the OFR, the Florida Division of Administrative Hearings conducted separate hearings on both cases.
In March 2003, the Administrative Law Judge (ALJ) in the Kligfeld case concluded as a matter of law that the Florida Securities and Investors Protection Act, Chapter 517, Florida Statutes, had been preempted by the Viatical Settlement Act, Chapter 626, Part X, Florida Statutes, and that as a result, Kligfeld had not sold unregistered securities. The OFR filed exceptions and the OFR disagreed with the ALJ's conclusion of law that Chapter 517 had been preempted. The OFR entered a final order against Kligfeld in June 2003.
In May 2003, the ALJ in the Torchia case, contrary to the decision of the ALJ in the Kligfeld case, found that Torchia had sold unregistered securities and had acted as an unregistered dealer. The ALJ recommended that Torchia be ordered to cease and desist and to pay a fine for each violation. Torchia filed exceptions and the OFR approved the ALJ's findings of fact and recommendations in August 2003. The appellants were ordered to cease and desist and to pay a fine for each violation, the total of which equaled or exceeded the amount of commissions they had collected for selling the VSPA's.
*38 In this consolidated appeal, the appellants conceded at oral argument that the VSPA's involved in this cause meet the Howey[1] test and therefore constitute securities which would ordinarily be subject to regulation under Chapter 517. Appellants argue, however, that Chapter 626 preempts Chapter 517 and therefore the regulation of viatical settlement agreements is within the exclusive purview of the Department of Insurance. We disagree and affirm.
The OFR's exercise of jurisdiction in this case is based upon the appellants' sale of investment contracts. Investment contracts are expressly defined as securities under section 517.021(20)(q), Florida Statutes, and the ABS program clearly meets the investment contract analysis as adopted by Florida courts. See § 517.021(20)(q), Fla. Stat. (2003); Farag v. Nat'l Databank Subscriptions, Inc., 448 So.2d 1098, 1101 (Fla. 2d DCA 1984); Adams v. State, 443 So.2d 1003, 1005 (Fla. 2d DCA 1983).
Chapter 626, Part X, does not expressly preempt the Securities Act. In order for the legislature to be deemed to have expressly preempted the Florida Securities Act through the enactment of Chapter 626, the statute must contain express and unambiguous preemption language. See Lowe v. Broward County, 766 So.2d 1199 (Fla. 4th DCA 2000) (stating "for the legislature to expressly preempt an area, the preemption language of the statute must be specific; `express preemption cannot be implied or inferred'"). Chapter 626 contains no language that can be construed as an express preemption of Chapter 517. Thus, if preemption is to exist, it would have to be implied. The Florida Supreme Court, however, has made clear that implied preemption is not favored under Florida law.
In Flo-Sun, Inc. v. Kirk, 783 So.2d 1029 (Fla.2001), the Florida Supreme Court emphasized that, in cases where one statute is alleged to have repealed another, "the general rule ... is that implied repeals are not favored and will not be upheld in doubtful cases." Id. at 1035 (citing State v. Digman, 294 So.2d 325 (Fla.1974)). "Moreover, before making a determination that a subsequent statute has impliedly repealed one previously enacted, there should appear either a positive repugnancy between the two statutes or a clear legislative intent that the later act prescribes the only governing rule." Kirk, 783 So.2d at 1035 (citing Atkinson v. State, 156 Fla. 449, 23 So.2d 524 (1945)); see also City of Punta Gorda v. McSmith, Inc., 294 So.2d 27 (Fla. 2d DCA 1974) (stating "[t]he general rule of legislative construction presumes later statutes are passed with knowledge of prior existing laws, and favors a construction which gives each a field of operation, rather than have one meaningless or repealed by implication"). There is certainly no positive repugnancy between Chapter 517 and Chapter 626. Since the statutes are not positively repugnant to one another, and there is no express preemption between Chapter 626 and Chapter 517, preemption should not be read into the statutory scheme. We, therefore, affirm the final orders.
AFFIRMED.
WARNER and GROSS, JJ., concur.
NOTES
[1] S.E.C. v. W.J. Howey Co., 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946) (To prove the existence of an investment contract there is a three pronged test which requires: 1) an investment of money; 2) a common enterprise; and 3) expectations of profits to be derived solely from the efforts of another.).