**Ellen GREENFIELD, an individual, on behalf of herself and all others similarly situated, Plaintiff,**

v.

**YUCATAN FOODS, L.P., Defendant.**

**Case No. 13–21610–CIV.**

United States District Court, S.D. Florida.

Signed May 7, 2014.

Howard Mitchell Bushman, Lance August Harke, Sarah Clasby Engel, Harke Clasby & Bushman LLP, Miami Shores, FL, for Plaintiff.

Marc S. Nurik, Law Offices of Marc S. Nurik, Fort Lauderdale, FL, Nathan M. Davis, Liner, Grode, Stein, Yankelevitz, Sunshine, et al., Los Angeles, CA, for Defendant.

## ORDER STAYING CASE

KATHLEEN M. WILLIAMS, District Judge.

This **MATTER** is before the Court on Defendant Yucatan Foods, L.P.'s motion to dismiss Plaintiff's class action and representative action complaint (DE 13, "MTD"), Plaintiff's response (DE 17, "Resp."), and Defendant's reply (DE 18, "Reply").

### I. BACKGROUND

Plaintiff Ellen Greenfield filed a three-count class action[1] complaint against Defendant Yucatan Foods, L.P. ("Yucatan"), on May 3, 2013, alleging violations of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201–501.213 (Counts 1 and 2), and a Florida state law claim for unjust enrichment (Count 3). (DE 1, "Compl."). Yucatan filed a motion to dismiss all counts of the complaint on August 1, 2013.

#### a. Summary of Allegations

For the purposes of Yucatan's motion to dismiss, the Court accepts the facts of the complaint as true. *See Speaker v. U.S. Dept. of Health and Human Servs. Ctrs. For Disease Control and Prevention,* 623 F.3d 1371, 1379 (11th Cir.2010). Yucatan is a limited partnership that manufacturers food products for sale to consumers. Plaintiff and members of the putative class are consumers that purchased various avocado products manufactured by Yucatan, including "Authentic Guacamole." (Compl. ¶ 10; 13). Plaintiff claims that Yucatan

---

1. Class certification is not before the Court and the Court makes no judgment regarding the appropriateness of class treatment in this case.

mislabeled these products because it failed to identify sugar as an ingredient. (Compl. ¶ 15). Instead, Defendant identified a form of sugar, "Evaporated Cane Juice" ("ECJ"), as an ingredient. (Compl. ¶ 15).

Plaintiff avers that she and the class have suffered economic injuries resulting from this deceptive and unfair conduct. (Compl. ¶ 23). Specifically, Plaintiff asserts that Yucatan's mislabeling led consumers to pay a premium price for these various avocado products, which did not satisfy the minimum standards established by law and which contained inferior or undesirable ingredients. (Compl. ¶ 20). Plaintiff further claims that but for Yucatan's mislabeling, she and the class would not have purchased or would not have paid a premium price for Yucatan's products.[2] (Compl. ¶ 23). As a result, Plaintiff alleges two counts for violations of the Florida Deceptive and Unfair Trade Practices Act and one count for unjust enrichment.

### b. The FDA Regulates Evaporated Cane Juice

These state law claims concern the proper naming and representation of sugar cane derivatives on food product labels. Consequently, the federal food regulatory scheme comes into play. The U.S. Food and Drug Administration ("FDA") regulates sugar in its various forms under the authority granted to it by the Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 301 et seq., as amended by the Nutrition Labeling and Education Act of 1990 ("NLEA"), 21 U.S.C. § 343 et seq. Pursuant to that grant of authority, Congress tasked the FDA with establishing and maintaining a uniform federal scheme of food regulation to ensure that food is labeled in a manner that does not mislead consumers.

■ The gravamen for a misbranding claim is that the consuming public is not given notice of the true character of the food product. 21 U.S.C. section 343 sets forth the conditions under which food is considered "misbranded." Generally, food is misbranded under 21 U.S.C. section 343(a)(1) if "its labeling is false or misleading in any particular."

■ State police powers traditionally included the proper marketing and regulation of food, but the NLEA provides that no state may directly or indirectly establish any requirement for the labeling of food that is not "identical" to the FDCA. See 21 U.S.C. § 343–1(a). Thus, the FDCA "comprehensively regulates food and beverage labeling." Pom Wonderful LLC v. Coca–Cola Co., 679 F.3d 1170, 1175 (9th Cir.2012), cert. granted, — U.S. ——, 134 S.Ct. 895, 187 L.Ed.2d 701 (2014). In its Motion, Yucatan raises federal preemption as a ground for dismissal.

The Court does not reach the preemption issues today except to note that the effect of the express preemption provision of the NLEA makes the FDA's interpretation of the federal acts central to Plaintiff's FDUTPA claims. If Yucatan's labeling practice is compliant with FDA standards Plaintiff very likely cannot state a claim for a per se violation of FDUTPA because the Florida food regulations must be identical to the FDA's. And if Yucatan's labeling practice is compliant with FDA standards, Plaintiff is much less likely to be able to state a claim for a traditional viola-

---

**2.** Plaintiff does not allege that she suffered adverse health consequences as a result of Defendant listing ECJ as an ingredient instead of sugar. Indeed, it is not clear whether Plaintiff consumed the products herself or simply purchased them to pass along to her attorney for inspection. In any case, Plaintiff alleges purely economic injury based on labeling claims. (Compl. ¶¶ 5, 10–23).

tion of FDUTPA because FDUTPA exempts from enforcement "[a]n act or practice required or specifically permitted by federal or state law." Fla. Stat. § 501.212(1) (FDUTPA's "safe harbor" provision).

On the other hand, *if* the FDA finds that evaporated cane juice is not the common or usual name for any type of sweetener, Plaintiff's *per se* FDUTPA argument becomes apparent. And *if* he FDA finds that evaporated cane juice is a misleading term, then Plaintiff will have strong evidence of a deceptive and unfair practice to support a claim for a traditional violation of FDUTPA.

Thus, although Plaintiff has alleged three state law claims, her complaint turns on whether the term "evaporated cane juice" is false and misleading under the FDCA and its implementing regulations. Accordingly, Plaintiff's claims require a determination of whether "evaporated cane juice" is "[t]he common or usual name" for the sweetener in the purchased products and whether Yucatan identified that ingredient "in as simple and direct terms as possible, [disclosing] the basic nature of the food or its characterizing properties or ingredients." 21 C.F.R. 102.5; *see also* Fla. Stat. § 500.11(1)(i). Therefore, the Court considers the FDA's position on evaporated cane juice.

### c. *2009 Draft Guidance*

In 2009, the FDA issued *Draft Guidance for Industry: Ingredients Declared as Evaporated Cane Juice* ("ECJ Draft Guidance") indicating that the term "evaporated cane juice" had a potential to mislead.[3] (Compl. ¶ 32; 38). The ECJ Draft Guidance provided in pertinent part:

Sweeteners derived from sugar cane syrup should not be listed in the ingredient declaration by names which suggest that the ingredients are juice, such as 'evaporated cane juice.' FDA considers such representations to be false and misleading under section 403(a)(1) of the Act (21 U.S.C. 343(a)(1)) because they fail to reveal the basic nature of the food and its characterizing properties (i.e., that the ingredients are sugars or syrups) as required by 21 CFR 102.5.

2009 WL 3288507, at *3. The FDA has not finalized or formally adopted this draft guidance. When addressing a similar draft, non-binding agency policy, the Tenth Circuit noted that because such policies have not been finalized or adopted by the agency, they are afforded neither *Chevron*[4] deference, nor "the lesser deference applicable to interpretative rules." *S. Utah Wilderness Alliance v. Dabney*, 222 F.3d 819, 829 (10th Cir.2000).

Furthermore, the plain language of the draft guidance made clear that it is not a final, binding regulation on how evaporated cane juice should be listed in an ingredient declaration. Both in the preface and the introduction to the draft guidance, the FDA warned that the draft guidance "contains nonbinding recommendations"; "is being distributed for comment purposes only"; "does not create or confer any rights for or on any person and does not operate to bind FDA or the public"; and "do[es] not establish legally enforceable responsibilities." 2009 WL 3288507, at *1 n. 1. The FDA further clarified that "[t]he use of the word *should* in Agency guidances means that something is **suggested or recommended, but not required.**" *Id.* (emphasis added).

---

3. *See* FDA, Draft Guidance for Industry, 2009 WL 3288507.

4. *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

#### d. Recent FDA Action

As noted by Judge Gonzalez Rogers of the Northern District of California in *Reese v. Odwalla, Inc.,* —— F.Supp.2d ——, ——, No. 13–cv–947–YGR, 2014 WL 1244940, at *5 (N.D.Cal. March 25, 2014), the "FDA has revived its review of the [evaporated cane juice] issue." On March 4, 2014, FDA officially reopened the public comment period on its 2009 Draft Guidance and requested comment on whether evaporated cane juice is an appropriate common and usual name. *See* Draft Guidance for Industry on Ingredients Declared as Evaporated Cane Juice; Reopening of Comment Period; Request for Comments, Data, and Information, 79 Fed.Reg. 12507 (March 5, 2014) (the "Notice"). The Notice states, in pertinent part:

> We have **not reached a final decision on the common or usual name** for this ingredient and are reopening the comment period to request further comments, data, and information about the basic nature and characterizing properties of the ingredient sometimes declared as "evaporated cane juice," how this ingredient is produced, and how it compares with other sweeteners.

Notice at 1 (emphasis added). Significantly, the FDA does plan to provide final guidance: "After reviewing the comments received, we intend to revise the draft guidance, if appropriate, and issue it in final form." *Id.* at 5. The comment period remains open until May 5, 2014, and the Parties can anticipate a final determination in accordance with the FDA's good guidance practice regulations.

#### II. DISCUSSION

 The disputes in this case concern an unresolved issue of food labeling law that the interpreting agency is actively considering. The primary jurisdiction doctrine applies where a plaintiffs claims implicate a federal agency's expertise with a regulated product. *See United States v. W. Pac. R.R. Co.,* 352 U.S. 59, 64, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956) (primary jurisdiction doctrine applies "whenever enforcement of [a] claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body.").

 The doctrine enables a court to take advantage of an agency's expertise, protects the integrity of the regulatory scheme, and promotes uniformity. *See Flo–Sun, Inc. v. Kirk,* 783 So.2d 1029, 1037 (Fla.2001). Furthermore, in Florida, "the application of the doctrine of primary jurisdiction is a matter of deference, policy and comity, not subject matter jurisdiction." *Id.* The Fifth Circuit held that primary jurisdiction promotes the proper relationships between the branches of government:

> The doctrine operates, when applicable, to postpone judicial consideration of a case to administrative determination of important questions involved by an agency with special competence in the area. It does not defeat the court's jurisdiction over the case, but coordinates the work of the court and the agency by permitting the agency to rule first and giving the court the benefit of the agency's views.

*Mercury Motor Exp., Inc. v. Brinke,* 475 F.2d 1086, 1091–92 (5th Cir.1973).[5] Thus, assuming that the requirements of the Class Action Fairness Act are met, the Court has subject matter jurisdiction in this case. The question is whether the

---

**5.** The Eleventh Circuit, in *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*), adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981.

circumstances favor deference to an agency while it receives comments and considers a critical issue in the case.

■■■■ Courts consider four factors when applying the doctrine of primary jurisdiction: (1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory scheme that (4) requires expertise or uniformity in administration. *In re Horizon Organic Milk Plus DHA Omega–3 Mktg. & Sales Practice Litig.*, 955 F.Supp.2d 1311, 1348 (S.D.Fla.2013) (citations and internal quotations omitted). The four factors are not exclusive and courts seem heavily influenced by a fifth factor: whether the FDA has shown any interest in the issues presented by the litigants. *See id.* at 1351 (noting that courts have dismissed on primary jurisdiction grounds when "the FDA continues to be actively involved in monitoring and evaluating labeling" and declined to apply primary jurisdiction when the parties do "not provide evidence that the FDA has actually taken any interest in investigating the claims or issues presented"); *compare, Taradejna v. Gen. Mills, Inc.*, 909 F.Supp.2d 1128, 1135 (D.Minn.2012) (finding that it would be "imprudent" for the Court to substitute its judgment for that of the FDA pending agency revision of the relevant standard); *with Krzykwa v. Campbell Soup Co.*, 946 F.Supp.2d 1370, 1375 (S.D.Fla.2013) (finding that the FDA's consistent policy of declining to promulgate rules concerning "natural food products" signaled a lack of interest in regulating that area of food labeling) (citing *Janney v. Gen. Mills, Inc.*, 944 F.Supp.2d 806, 814–15 (N.D.Cal.2013)).

First, the FDA is once again considering, among other things, the common or usual name of evaporated cane juice as well as its basic characterizing properties. *See* Notice. Second, Congress vested the FDA with regulatory authority over food labeling. *See* FDCA as amended by NLEA. Third, those same acts subject all food moving through interstate commerce to the federal labeling standards. *See id.* Fourth, as discussed in *Reese* under facts and law similar to this case, courts are divided on the applicability of the primary jurisdiction doctrine and the legal effect of the FDA's 2009 draft guidance; undoubtedly, a final interpretation by the FDA will infuse a disputed area of the law with uniformity. *Reese*, —— F.Supp.2d at ——, 2014 WL 1244940, at *4. The need for consistent guidance is underscored by the increasing volume of this type of litigation and the concomitant potential for inconsistent judicial rulings. *See Swearingen v. Santa Cruz Natural, Inc.*, No. 13–04291–SI, at 6, 2014 WL 1339775 (N.D.Cal. April 2, 2014) ("[A]pplying the doctrine of primary jurisdiction allows the Court to benefit from the FDA's expertise on food labeling and will ensure uniformity in administration of the regulations.").

As for the unofficial fifth factor, the FDA's decision to allow the ECJ Draft Guidance to linger for more than four years might have indicated a previous unwillingness to regulate evaporated cane juice. But now, the FDA has taken up the subject for reconsideration. The Court is well aware that the "primary jurisdiction doctrine is not designed to secure expert advice from agencies every time a court is presented with an issue conceivably within the agency's ambit." *In re Horizon Organic Milk Plus DHA Omega–3 Mktg. & Sales Practice Litig.*, 955 F.Supp.2d at 1349 (internal quotations omitted). However, as Judge Gonzalez Rogers points out, this is "a matter that is not only within the expertise and authority of the agency, it is before the agency at this moment." *Reese,*

—— F.Supp.2d at ——, 2014 WL 1244940, at *4; *see also Swearingen,* 13–04291–SI, at 5 ("[C]ourts find it particularly appropriate to defer to [the FDA] when, as is true here, the [FDA] is in the process of making a determination on a key issue in the litigation.").

In response, Plaintiff argues that the doctrine of primary jurisdiction should not apply where the agency or administrative body cannot provide the relief sought. (Resp. at 15). This argument reflects, as the Supreme Court explained in *Reiter v. Cooper,* 507 U.S. 258, 269, 113 S.Ct. 1213, 122 L.Ed.2d 604 (1993), "a mistaken understanding of primary jurisdiction." The fact that the FDA does not provide the relief sought would be relevant to an exhaustion of administrative remedies analysis, but that doctrine does not apply when the administrative body in question does not have exclusive jurisdiction over the claim. *See, e.g., Reiter,* 507 U.S. at 269, 113 S.Ct. 1213; *Davis & Assocs. v. Williams,* 892 A.2d 1144, 1149–50 (D.C. 2006) (distinguishing the doctrine of exhaustion of administrative remedies from doctrine of primary jurisdiction and noting that courts make exceptions to the exhaustion of remedies doctrine when administrative remedies are inadequate).

When the doctrine of primary jurisdiction applies, the court has discretion either to stay the case and retain jurisdiction or to dismiss the case without prejudice if the Parties would not be unfairly disadvantaged. *See Reiter,* 507 U.S. at 268–69, 113 S.Ct. 1213. The doctrine applies here. While it seems unlikely that the Parties would be unfairly disadvantaged by a dismissal without prejudice, staying this case appears to be the more prudent course.

## III. Conclusion

For all of the foregoing reasons, this case is **STAYED** until August 15, 2014. Yucatan Foods, L.P.'s motion to dismiss Plaintiff's class action and representative action complaint (DE 13) is **DENIED AS MOOT** without prejudice to renew. The Clerk is directed to **CLOSE** this case for administrative purposes. Any and all pending motions are **DENIED AS MOOT** without prejudice to renew.